## LOUISA WADDELL v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division Two, June 16, 1908.

1. **NEGLIGENCE: Recovery Notwithstanding Contributory Negligence: Crossing Street.** Notwithstanding a pedestrian in crossing a street, in front of an approaching street car, which she neither saw nor looked for, was guilty of contributory negligence, yet if the motorman by the exercise of ordinary care could have seen her and stopped the car in time to have avoided injuring her, and there was substantial evidence that he was not looking and that the car could have been stopped, after her danger should have been discovered, in time to avoid striking her, no demurrer to the evidence should be sustained.

2. ————: **Instruction.** Where the instruction given by the court fairly presented the question whether, after the appearance of danger to plaintiff, the opportunity to stop the car was lost on account of her proximity to the car, it is not error to refuse a clear-cut instruction for defendant on the same point.

3. ————: ————: **Measure of Damages: General.** The instruction authorized the jury to assess plaintiff's damages "at such a sum as would be a reasonable and just compensation for the injuries sustained by her, if any, as shown by the evidence, not exceeding, however, the sum of ten thousand dollars." *Held,* that the instruction is not subject to the criticism that it does not limit the damages to the injuries set forth in the petition, and gives a roving commission to the jury to establish their own standard of damages. It is not so broad as to be error, and if defendant was not satisfied with it it was its duty to ask such modifications thereof as would restrict it to the proper elements of damages as stated in the petition.

4. **EXCESSIVE VERDICT:** $6,500. Plaintiff, aged seventy-five,. in good health, active and assisting her daughters in their housework and at times her son in his store, was struck by a. street car and rendered unconscious for fifteen minutes. There was a cut over the eye, but no bones were broken. One limb was bruised and discolored, and her face was so swollen the next day that one eye could not be seen., In about five weeks she was able to get around on crutches for a time, and thereafter got worse and again became bed-ridden. Her physician testi- fied that the leg had become dropsical, that she suffered with pain in the knee and hip, that her mind wandered, that she had suffered all the time from mental fear of further injury, and that her physical and mental condition might reasonably result from her injuries. Other physicians testified that her mental condition was normal and due to feebleness from old age. At a former trial on practically the same evidence the verdict was $2,000. *Held*, that a verdict for $6,500 was exces- sive by $1,500.

Appeal from Jackson Circuit Court.—*Hon. Hermann. Brumback,* Judge.

AFFIRMED CONDITIONALLY.

*John H. Lucas* and *C. C. Madison* for appellant..

(1) Plaintiff, being a mature person, in posses- sion of all of her faculties, stands convicted of con- tributory negligence in walking upon a street car track immediately in front of a moving car, and there being no opportunity for the motorman to avoid the accident after the danger became apparent, the verdict is with- out foundation. Reno v. Railroad, 180 Mo. 487; Roen- felt v. Railroad, 180 Mo. 554; Holwerson v. Railroad, 157 Mo. 216; Watson v. Railroad, 133 Mo. 246; Lennon v. Railroad, 198 Mo. 514; Markowitz v. Railroad, 186 Mo. 350; Rissler v. Railroad, 113 Mo. App. 120; Sites. v. Knott, 197 Mo. 684; Van Bach v. Railroad, 171 Mo. 338; Ries v. Railroad, 179 Mo. 1; Moore v. Railroad, 176 Mo. 528; Schmidt v. Railroad, 191 Mo. 233; Boring v. Railroad, 194 Mo. 541. (2) The court committed error in overruling defendant's objection to the testi-

mony of Roy Hardin. 17 Cyc. 25; Masterson v. Railroad, 204 Mo. 571. (3) The court erred in refusing instruction B asked by defendant. Authorities under point 1. (4) Instruction 6, given by the court at plaintiff's request, was erroneous, in that it is too broad, and authorized the jury to allow damages for injuries not pleaded. Harmon v. Donohoe, 153 Mo. 265; Hawes v. Stock Yards Co., 103 Mo. 60. (5) The verdict is so grossly excessive as to establish prejudice on the part of the jury. Taylor v. Railroad, 185 Mo. 240; Bragg v. Railroad, 192 Mo. 331; Stolze v. Railroad, 188 Mo. 581; Newcomb v. Railroad, 182 Mo. 687; Nicholds v. Plate Glass Co., 126 Mo. 55; Haynes v. Trenton, 108 Mo. 124; Stoetzele v. Swearingen, 90 Mo. App. 588.

*Cowherd & Ingraham, Bird & Pope* and *T. J. Madden* for respondent.

(1) Appellant urges that there is no room for the application of the humanitarian doctrine under the facts of this case. This is the second appeal, the first appeal being to the Kansas City Court of Appeals (113 Mo. App. 680). The evidence as to liability is the same. The printed abstract of appellant's record on the first appeal was used by agreement upon the last trial, and the evidence of Roy Hardin and S. V. Waddell was read therefrom and plaintiff's witnesses were cross-examined from the same. The Court of Appeals held that the case was one calling for the application of the humanitarian rule. That decision, therefore, has become the law of the case. Carey v. West, 165 Mo. 455; Butler Co. v. Bank, 165 Mo. 460; Brummell v. Harris, 162 Mo. 403; Chapman v. Railroad, 146 Mo. 494. We concede that it is now the established law in this State that a decision of the Kansas City Court of Appeals is not *res adjudicata* on a second appeal to this court in the same case (Hennessy v. Brewing Co., 145 Mo. 115; Paddock v. Rail-

road, 155 Mo. 534; Bealey v. Smith, 158 Mo. 522; City of Sedalia v. Donohue, 190 Mo. 415), but, as is expressly held in all of these cases, the decision of the Court of Appeals is binding and conclusive upon the trial court, on another trial of the case, and this court on a second appeal will not reverse the decision of the Court of Appeals unless it is satisfied that gross and manifest injustice has been done by such decision. Bealey v. Smith, 158 Mo. 522. Independent of the former adjudication, there can be no question that plaintiff is entitled to recover under the testimony shown in the record, and the adjudications of this court. McQuade v. Railroad, 200 Mo. 150; Zander v. Railroad, 206 Mo. 445. The testimony shows that by the exercise of ordinary care the motorman could have avoided striking plaintiff after she was in a situation of danger. Holden v. Railroad, 177 Mo. 469; Murray v. Railroad, 108 Mo. App. 510; Eckhard v. Railroad, 190 Mo. 593; Klockenbrink v. Railroad, 172 Mo. 690; Moore v. Railroad, 194 Mo. 11; Reyburn v. Railroad, 187 Mo. 572; Riska v. Railroad, 180 Mo. 184; Mann v. Railroad, 123 Mo. App. 486. (2) Complaint is made that instruction 6 given at request of plaintiff is too broad, and authorized the jury to allow damages for injuries not pleaded. This instruction is identical in form to one given in West v. Railroad, 187 Mo. 364, and this court held the same to be proper, and not subject to the criticism made in Hawes v. Stock Yards Co., 103 Mo. 60. It is a well-established rule under the decisions of this court that where a general instruction is given for the plaintiff, the defense must ask restricting instructions, or it will not be heard to complain. Browning v. Railroad, 124 Mo. 71; Smith v. Fordyce, 190 Mo. 32; Minter v. Bradstreet, 174 Mo. 491.

BURGESS, J.—This is an action for damages for injuries alleged to have been caused by the negligence

of defendant, its agents and servants.  Plaintiff re-
covered judgment in the sum of $6,500, from which
judgment defendant appeals.  The facts are these:

Plaintiff at the time of the injury was about
seventy-five years of age, active and well-preserved
for her age, accustomed to doing housework, helping
her daughters when at their homes, and occasionally
assisting her son at his grocery store.  On the after-
noon of May 17, 1902, she left the house of her daugh-
ter, Mrs. Lambert, living at 1422 Penn street, Kansas
City, to go to her son's store, on the northwest corner
of Fourteenth and Penn streets, in said city, and in
attempting to cross Fourteenth street, near the inter-
section of that street with Penn, she was struck and
injured by a west-bound car on the ''Observation
Park'' line of defendant's street railway system.  This
was a double-track line, and ran east and west on
Fourteenth street, the west-bound cars taking the north
track, and the east-bound the other.  Fourteenth street
was about twenty-nine feet wide between the curbs,
defendant's tracks occupying the central fifteen feet
of the street, leaving little more than seven feet of
space between the outer rails and the curb of the side-
walk on either side of the street.  The cars were pro-
pelled by electricity.

The course taken by plaintiff was north, on the
west side of Penn street to Fourteenth.  She stopped
at the southwest corner of Fourteenth and Penn streets,
as an east-bound car was then passing, and then, after
taking a few steps westward, she proceeded at an ordi-
nary gait to cross Fourteenth street diagonally, or in
a northwesterly direction, towards her son's store.
She wore a sunbonnet, which somewhat obstructed or
confined her vision, was carrying a bundle in her arms,
and seemed to be wholly unaware of the approach
of a west-bound car on the north track.  The testi-
mony introduced by plaintiff shows that the motorman

on this car was looking towards the north and did not see plaintiff, and that he failed to ring the bell or give any other warning until just at the time, or immediately before, the car struck her, when he shouted and rang the bell. It is also shown that she had stepped over the south rail of the north track when the car struck and knocked her over and forward between the two tracks; that there was no obstruction in the street to prevent plaintiff from seeing the approaching car, or the motorman from seeing her, had he been looking ahead. The car, after colliding with plaintiff, ran about a car's length, or twenty feet, before being stopped. It was going up grade at the time and carried a load of passengers.

The motorman testified that he shut off the power before the car had reached Penn street in order to slacken the speed while making the crossing, and that he had his hand on the brake wheel and was looking ahead and ringing the bell when he first noticed the plaintiff; that when he first saw her she was advancing over the south rail of the south track and that she was then from thirty to forty feet ahead of or distant from the car; that he realized the moment he saw her that unless she or the car stopped there would be a collision; that he shouted and started to apply the brake as quickly as he could, but that plaintiff didn't stop or take notice, and was about to step in front of the car when the front gate on the left side of the car struck her. There was considerable testimony as to the speed of the car at the time. The motorman himself testified that it was running at a speed of eight or nine miles an hour before he shut off the power, and that its speed was from seven to eight miles an hour after the car crossed Penn street. An expert witness introduced by plaintiff stated that a car, such as the one in question, running at a speed of eight or nine miles an hour and under the conditions described, could be stopped

in fifteen or twenty feet after the brakes were applied. Another expert witness, offered by defendant, said that the car could have been stopped in thirty or forty feet. All plaintiff's witnesses who witnessed the collision testified that she had stepped on the north track in front of the car just before it struck her, and that the motorman was not looking ahead and did not ring the bell before the collision.

Plaintiff was picked up and carried, unconscious, to the store of her son, and she remained unconscious for about fifteen minutes. Dr. Myers was called in and gave emergency treatment, sewing up a gash over her eye, but made no examination for further injuries. She was taken to the home of her daughter, Mrs. Lambert, and put to bed, where she remained two weeks. Dr. Porter was called in next day, and according to the testimony of plaintiff's witnesses, he said it would take time for her to recover from her bruises; that she needed only liniments and hot water, and that he did not care to get mixed up in a railroad case. The day following the injury, her daughters examined her body and found her left limb bruised and discolored, and her face so swollen that her left eye could not be seen. After being some five weeks in the house of Mrs. Lambert she was taken to the home of another daughter, where she was able for a time to get around on crutches, but thereafter got worse and was again bed-ridden. Dr. Welsh visited her in the fall of 1902, some months after the accident, and found plaintiff suffering from pain in the left leg, extending from the hip to the knee. Upon examination, he found that the leg was in a dropsical condition; that her mind wandered and that she suffered all the time from mental fear of further injury. Both the mental and physical condition of plaintiff, he stated in his testimony, was such as might reasonably result from injuries such as she had received. He testified that he

had been plaintiff's physician since the year 1896; that prior to the injury she was a well-preserved woman for her age and her mental condition good, but that, after the injury, she became childish, irrational and unstable in mind. The last time he saw her he thought she was getting worse. Mrs. Lambert, plaintiff's daughter, testified that no doctor had called professionally on her mother for more than a year before the injury; that she never was seriously sick, her only ailment being dyspepsia, for which trouble she was occasionally treated by physicians; that after the accident she became very forgetful, was unable at times to recognize her own children, and continually talked about her accident.

Dr. Porter, introduced as a witness for defendant, testified that he called on plaintiff the day after the accident, but did not treat her or make any examination. He thought she would recover from her injuries in a few days. He had been her physician several years before she was injured, but only called at intervals of about six months or so. The only trouble for which he treated her was indigestion. Regarding her mental condition at the time of the trial, it was his opinion that her mind was feeble, but that it was wholly due to old age. Dr. Schauffler, who was appointed by the court to examine plaintiff as to her mental condition at the time of the trial, testified that her condition was normal.

This case was before the Kansas City Court of Appeals upon an appeal by defendant from a judgment in favor of plaintiff in the sum of two thousand dollars. That judgment was reversed and the cause remanded. [Waddell v. Railroad, 113 Mo. App. 680.] The case was retried upon the same pleadings and practically the same evidence as upon the first appeal, upon which appeal the court held that plaintiff was guilty of contributory negligence in coming into collision with the

moving car; that her negligence concurred with that of the motorman in failing to give warning, and that the defendant could not be held liable unless it appeared from the evidence that the motorman could have stopped the car in time to have prevented the injury to plaintiff after he had become aware, or by the exercise of reasonable care could have known, of her ignorance of the danger which confronted her and of her purpose to enter into it.

Defendant contends that contributory negligence on the part of plaintiff is conceded, that the case was tried upon that theory, and that it is conclusively shown by the evidence, read in connection with the physical facts, that there is no room for the "last chance" or humanitarian doctrine.

In the recent case of McQuade v. Railroad, 200 Mo. 150, the facts were very similar to the facts in this case, and the court said: "It is next contended that the demurrer to the evidence was properly sustained because there was no evidence that after the motorman saw deceased he could have saved his life. But there was evidence tending to prove that by the exercise of ordinary care the motorman could have seen the deceased on the track in time to have saved his life by the exercise of ordinary care thereafter, and in such case it is the settled law in this State that the plaintiff may recover. [Scullin v. Railroad, 184 Mo. 707; Klockenbrink v. Railroad, 172 Mo. 678; Morgan v. Railroad, 159 Mo. 262; Kellny v. Railroad, 101 Mo. 67; Hilz v. Railroad, 101 Mo. 36, and many others, in these cases cited.]" So in the still more recent case of Zander v. Railroad, 206 Mo. l. c. 464: "When a defendant sees, or by the exercise of ordinary care can see, the peril of the plaintiff caused by the latter's contributory negligence, in time to avoid injuring him, then the plaintiff can recover, notwithstanding his contributory negligence. This is now the accepted and

settled exception to the general rule that plaintiff's own contributory negligence bars a recovery.''

There was sufficient evidence in support of the theory upon which the case was tried to take the case to the jury, the weight of such evidence being for their consideration. The case is different in its essential features from the class of cases relied upon by defendant, wherein it is ruled that a person walking upon a street car track immediately in front of a moving car, there being no opportunity for the motorman to prevent the accident after the danger becomes apparent to him, cannot recover for injuries sustained by him, such injuries being occasioned by his own negligence and not the negligence of the defendant.

It is insisted by defendant that the court committed error in overruling the objection of the defendant to certain statements of Roy Hardin, a witness for plaintiff. This witness testified, without objection, that after the car passed the east line of Penn street the motorman ''never turned his head at all until just as he hit her; he never turned his head at all.'' The witness was asked another question, and the attorney for the defendant objected to this part of the answer: ''He was looking like he was looking at the corner, and when he got to Penn he still kept his eye on it.'' Later, the witness was asked if the motorman kept his eye on Penn street. This question was objected to as being leading and suggestive, but the objection was overruled, and the witness answered, ''Right on Penn street.''

The argument is that these answers of the witness were his own conclusions or inferences and were highly prejudicial to the defendant, and that to permit him to place his own construction on the action of the motorman was an invasion of the province of the jury. It is conceded by defendant that it was

proper for the witness to state the direction in which the motorman's head was turned (which, as the witness stated, was toward the corner of Penn street), and this being the case, we are unable to see how the defendant could have been prejudiced by the statement that the motorman still kept his eye on that street. Certainly, the judgment should not be reversed on that ground alone.

Defendant complains of the action of the court in refusing all the instructions asked by it, and in submitting the case to the jury upon the instructions asked by the plaintiff and those given by the court of its own motion. The defendant contends that it was entitled to a clear-cut instruction upon the question whether, after the appearance of danger to plaintiff, the opportunity to stop the car was lost on account of the proximity of plaintiff to the car, and that this question was presented in the latter part of instruction "B" requested by defendant, but was not presented in any of the instructions given by the court. While instruction number nine, given by the court, is not couched in the same language as the said refused instruction, the substance is the same, and it presented this feature of the case very fairly to the jury. Nothing more could be desired.

Instruction number six, as to measure of damages, is claimed by defendant to be erroneous as being too general. This instruction authorizes the jury to assess plaintiff's damages "at such sum as would be a reasonable and just compensation for the injuries sustained by her, if any, as shown by the evidence, considering their nature and character, as shown by the evidence, not exceeding, however, the sum of ten thousand dollars." The criticism is that the instruction does not limit the damages to the injuries as set forth in the petition, but gives a roving commission to the jury to establish their own standard of damages. In

support of this contention defendant cites us to the case of Hawes v. Stock-Yards Company, 103 Mo. 60. In that case the court, in effect, instructed the jury that if they found for the plaintiff, they should find for him such sum as they might believe would compensate him for his injuries, not exceeding the sum of twenty thousand dollars. The jury were not informed of the proper elements of compensation within the meaning of the law, but were left to conjecture the consequence of plaintiff's injuries, however remote, and to allow him such compensation therefor as might to them seem proper, without regard to the legal rules for determining the limits of such compensation.

In the case of Harmon v. Donohoe, 153 Mo. 263, an instruction, otherwise not subject to criticism, told the jury that they might assess damages at any sum they might deem proper, not to exceed the amount sued for, namely, $10,000. The court said: "Instruction five lays the predicate for the recovery of any damages, specifies what the jury may consider in determining the amount of damages, and then tells the jurors they may assess 'any sum they deem proper, not to exceed the amount sued for, namely, $10,000.' If the instruction had been simply that the jury might give the plaintiff any sum they deemed proper, not to exceed the amount sued for, it would have been subject to the objection of uncertainty urged, but read in connection with what precedes the words objected to in the same instruction, defining specifically what the elements of plaintiff's damages must be, 'no intelligent juror could have been misled' by the instruction."

In the Hawes case the jury were not restricted to any particular evidence or state of facts, but were permitted to allow plaintiff such damages as they might believe would compensate him for his injuries, not exceeding $20,000. Harmon's case was an action for breach of promise of marriage, and the challenged in-

struction in that case told the jury that they might
assess the plaintiff's damages at any sum they might
deem proper, not to exceed the amount sued for; but
the court held that the instruction was not erroneous,
or likely to mislead the jury, when the criticised por-
tion was read in connection with the preceding words
in the same instruction specifically defining the ele-
ments of the plaintiff's damages.

The instruction in the Hawes case differs from
that in the case at bar in that it does not refer to ei-
ther the allegations in the petition or to the evidence
with respect to the injuries sustained, while the in-
struction under consideration limits the damages to
such sum as might be warranted by the evidence in
relation to the injuries, their nature and character, not
exceeding the amount claimed in the petition. An in-
struction substantially the same as this met with the
approval of this court in West v. Railroad, 187 Mo.
351, wherein it was ruled that such instruction was not
amenable to the criticism passed upon that in the
Hawes case. If defendant was not satisfied with the
instruction as given because too broad, and likely to
be misunderstood by the jury, it was the duty of de-
fendant to ask for such modification thereof as seemed
necessary to restrict it to the proper elements of dam-
age under the allegations in the petition. [Browning
v. Railroad, 124 Mo. 55; Minter v. Bradstreet, 174 Mo.
491; Smith v. Fordyce, 190 Mo. 32.]

A final contention is that the verdict is excessive.
Mrs. Waddell was about seventy-five years of age at
the time of the injury, and not a very strong woman.
None of her bones were broken, but she was painfully
bruised and hurt. She was confined to her bed about
two weeks. The day following the injury her daugh-
ters examined her body and found her left limb
bruised and discolored, and her face so swollen that
her left eye could not be seen. After about five weeks

she was able to get around on crutches for a time, but
thereafter got worse and again became bed-ridden.
Dr. Welsh visited her in the fall of 1902, some months
after the accident, and found her suffering from pain
in the left leg, from the hip to the knee.   He found
the leg in a dropsical condition, that her mind wan-
dered, and that she suffered all the time from mental
fear of further injury.   He thought that plaintiff's
mental and physical condition was such as might rea-
sonably result from injuries such as she had received.
Dr. Porter, who saw plaintiff a day or two after she
received the injury, but did not examine her, testified
that he thought she would recover from her injury in
a few days, and that the feebleness of her mind was
wholly due to old age.   Another doctor testified that
plaintiff's mental condition at the time of the trial was
normal.

Upon the first trial of this case plaintiff recov-
ered a verdict and judgment for the sum of two thou-
sand dollars against defendant, while the last trial
resulted in a judgment in her favor for six thousand
five hundred dollars, or more than three times the
amount of the first judgment, although the evidence
adduced at both trials was substantially the   same.
While the judgment is large and greatly in excess of
that recovered at the former trial, it was approved by
the trial court, and under such circumstances we are
not inclined to interfere.   However, we believe it ex-
cessive, the extent and character of the injuries con-
sidered, and therefore, unless the plaintiff remits fif-
teen hundred dollars of the amount of the judgment
within ten days from and after the filing of this opin-
ion, the judgment will be reversed and the cause re-
manded on the ground of excessiveness alone, but upon
remitting the sum named, the judgment will be af-
firmed.   All concur.