## WM. GUMM, Respondent, v. THE KANSAS CITY BELT RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 7, 1910.

1. **NEGLIGENCE: Railroad Crossing: Contributory Negligence: Humanitarian Doctrine.** Plaintiff sued for the death of his wife who was killed at a railroad crossing. The petition charged in its first count a negligent failure to maintain a flagman at the crossing, and excessive speed of the train, causing the death, both of which were sustained by the evidence. It was also established that if the deceased had used due care she would have seen and avoided the train. The petition charged in its second count a cause of action under the humanitarian doctrine. Instructions were given submitting the case under the first count, but not under the second, and a verdict was returned for plaintiff. *Held,* plaintiff was not entitled to recover under the first count of his petition, because his wife was guilty of contributory negligence as a matter of law.

2. **CONTRIBUTORY NEGLIGENCE: Presumption.** Deceased, under the facts in this case, had no right to leave her position of safety, relying on the presumption that the train was running at a lawful rate of speed.

3. ——————: **Humanitarian Doctrine.** .The virility of the defense of contributory negligence is not weakened by the humanitarian doctrine. It is only when the negligence of the injured person has been superseded in the chain of causal events by negligence of defendant in failing to reasonably employ an opportunity to discover the peril and avoid the injury that contributory negligence ceases to be a good defense.

4. **NEGLIGENCE:** ——————: ——————. In order to authorize a recovery in such a case as this, plaintiff must show that the engineer of the train saw, or ought to have seen, that deceased was about to put herself in a place of danger, in time to have prevented her injury.

Appeal from Jackson Circuit Court.—*Hon. Edw. P. Gates*, Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore, Cyrus Crane* and *Geo. J. Mersereau* for appellant.

(1) Plaintiff was guilty of contributory negligence as a matter of law. Payne v. Railroad, 136 Mo. 562; Kreis v. Railroad, 148 Mo. 321; Sanguinette v. Railroad, 196 Mo. 466; Hook v. Railroad, 162 Mo. 569; Schaub v. Railroad, 133 Mo. App. 444. (2) The plaintiff's instruction numbered 1 given at the request of plaintiff is erroneous. Culbertson v. Railroad, 140 Mo. 35; Crumpley v. Railroad, 98 Mo. 34; King v. Railroad, 98 Mo. 235; Rapp v. Railroad, 106 Mo. 423; Anderson v. Railroad, 196 Mo. 442. (3) The court erred in the admission of incompetent testimony. McGee v. Railroad, supra; Grout v. Railroad, supra.

*Ben. T. Hardin* for respondent.

(1) The court committed no error in refusing to take the case from the jury; the question as to negligence of the deceased contributing to her own injury was properly left to the jury to decide. The rule is that the evidence must be all one way, showing that deceased was guilty of negligence which was the prox-

imate cause of the injury, and that the railroad company. is not itself guilty of negligence contributing to the injury, before the court is warranted in taking the case from the jury.  Powers v. Transit Co., 202 Mo. 280, and cases there cited; Johnson v. Railroad, 203 Mo. 382; Gibler v. Railroad, 203 Mo. 208; Eppstein v. Railroad, 197 Mo. 720; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Murrell v. Railroad, 105 Mo. App. 88; Meng v. Railroad, 108 Mo. App. 553; Reed v. Railroad, 107 Mo. App. 238; Lynch v. Railroad, 208 Mo. 21; Murphy v. Railroad, 122 S. W. 334; Waddell v. Railroad, 213 Mo. 16.  (2) And in the absence of evidence to the contrary, the law presumes that Mrs. Gumm used ordinary care, and looked for the oncoming train, and had the right to assume that it was running at a rate of speed within the limit prescribed by the ordinance.  Powers v. Railroad, 202 Mo. 280; Stotler v. Railroad, 200 Mo. 146; Eckhard v. Transit Co., 190 Mo. 613; Riska v. Railroad, 180 Mo. 188; Weller v. Railroad, 164 Mo. 198; Crumpley v. Railroad, 111 Mo. 152; Murrell v. Railroad, 105 Mo. App. 97.

JOHNSON, J.—Plaintiff sued to recover damages for the death of his wife which he alleges was caused by the negligence of defendant.  A trial resulted in a verdict and judgment for plaintiff in the sum of $5,000.  An appeal was allowed defendant to the Supreme Court, but the case was afterward transferred to this court under the recent Act of the Legislature increasing the jurisdiction of the Courts of Appeals.

The death of Mrs. Gumm occurred in the morning of July 20, 1904, at the intersection of Twentieth and Locust streets, public streets in Kansas City.  The tracks of defendant's railroad—three in number—run east and west and cross Locust street at its intersection with Twentieth street.  To the east of Locust street (the course of which is north and south), the tracks

run straight a distance of 432 feet and then curve to a southeasterly course. Mrs. Gumm lived on Locust street, a short distance south of the railroad tracks. She was sixty-two years old, well preserved and vigorous. Her hearing was acute and her eyesight so good that she did not use glasses even for reading. She had gone on some errand to a place several blocks north of the railroad and was returning home when death overtook her. She had walked south on the sidewalk on the east side of Locust street until she reached the railroad crossing. There she stopped to await the passage over the crossing of an east-bound freight train which was running on the south track. The point where she stopped was at or very near a lamp post which stood a few feet north of the north railroad track, and about twenty-five feet from the middle track, which was the main line used by west-bound trains. As the rear end of the freight train began to clear the crossing, she started forward at an ordinary gait and proceeded to a point near the north rail of the middle track, when she was struck by the end of the pilot beam of a west-bound engine, and hurled across Locust street, where she fell to the north of the track.

The engine, drawing a passenger train, was running twenty to twenty-five miles per hour and approached the crossing without ringing the bell. There is evidence that the whistle was blown for a street crossing several blocks to the east but the weight of plaintiff's evidence sustains the contention that no warning of the approaching train was given by bell or whistle. Just as the engine struck the unfortunate woman, the whistle emitted a prolonged shriek, but the warning came too late. No watchman was stationed at this crossing, though the ordinances of the city, introduced in evidence, required defendant to maintain a watchman there. Another ordinance forbade the run-

ning of trains over this crossing at a greater speed than six miles per hour.

While Mrs. Gumm was standing at the lamp post, and during her progress to the point of collision, there was nothing to obstruct her view to the east. Had she looked, she could have seen the engine which could not have been more than two hundred feet from the east line of Locust street when she started to go over the crossing. There is evidence that the east-bound freight engine was emitting quite a volume of smoke, but even when considered in the light most favorable to the cause of action, the evidence does not justify a reasonable inference that the approach of the passenger engine was appreciably obscured by this smoke. There was nothing in the appearance of the woman that suggested to the witnesses who observed her that unconsciously she was going to her death. A milkman who knew her saw her standing at the lamp post with her back to the north and her face turned southward. He was some distance north of her and, of course, could not observe what was engaging her attention. On direct examination, he testified, in part:

"Now, Mr. Negus, I will ask you to state, if you can, to the jury, whether the woman was looking to the south, or east, or west, at the time she was standing in the place you have indicated. A. My idea is she was looking east.

"Mr. Crane: I move that the answer of the witness be stricken out, it being his idea about it.

"The Court: The motion is sustained and the jury will disregard entirely the statement of the witness, that his idea (was) she was looking east. State if you know. . . .

"Q. Now, Mr. Negus, the woman was standing, as you have testified, by the lamp post, with her back to the north. I will ask you to state to the jury in what direction she was looking. A. I will state to the jury, it was pretty hard for a man to tell which

way she was looking. She had a shaker on, and it is pretty hard work for me to tell which way she was looking. I would not be able to tell just which way she as looking.

"Q. She was standing still, at the time, was she? A. Yes, sir.

"Q. Now, then, from where you were standing, did you have a view of the Belt Line tracks east of the crossing? A. Yes, sir. . . .

"Q. From the point where Mrs. Gumm was standing, could a person have a good view of the Belt Line tracks east? A. Yes, sir.

"Q. What was on the Belt Line tracks there at that moment, with reference to trains; that is, east, I mean? A. There was a freight train going east on the side track.

"Q. Which track was that on,—the north track or the south track? A. On the south track. . . .

"Q. The Court: Just describe what happened, in your own language,—what you saw done and what happened, beginning with Mrs. Gumm standing there. A. When the freight train cleared the crossing, Mrs. Gumm started across, and a passenger train came down onto her and hit her."

On cross-examination:

"Q. And you say she had a shaker on her head? A. Yes, sir.

"Q. By that you mean a large sunbonnet? A. Yes, sir.

"By the Court: With closed sides? A. Yes, sir.

"Q. By Mr. Crane: Like the closed sides of a buggy? A. Yes, sir.

"Q. With no perforated slits down the sides— just a closed sunbonnet? A. The ordinary sunbonnet.

"Q. I supposed from your calling it a shaker, that you meant one of those good big ones. A. The ordinary ones.

"Q. Don't you make a distinction between the or-

dinary sunbonnet and the shaker you spoke about?    A. No, sir.

"Q.   Well, she stood there with her sunbonnet on, under the lamp post, and when this freight train got nearly off the track, she started to walk south?    A. Yes, sir.

"Q.   And you still kept looking at her?   A. Yes, sir.

"Q.   And you saw this train come around the bend from the east?   A. Yes, sir.

"Q.   And as she walked south there, there was nothing at all in the way of her seeing the train, if she had looked to the east?   A. Nothing that I could see.

"Q.   And she kept right on walking to the south, and the train kept on coming?   A. Yes, sir.

"Q.   And just as she got right up on to the track —on the north main line track—that instant the train struck her, didn't it?   A. Yes, sir.

"Q.   You heard it whistle?   A. The moment it struck her.

"Q.   It looked to you it whistled the moment it struck her, did it?   A. Yes, sir.

"Q.   You can't be positive about that, can you, with the train running so fast that a man could not get on it; the way it was, the whistle blew and then after that it struck her?   A. No, sir, it struck her before it blew; right at the time it blew.

"Q.   Wasn't that just before she fell down?   A. She was in the air when I heard the whistle blow.

"Q.   The beam of the engine struck her, didn't it? A.   I should judge it did; that is my estimation, that the beam struck her."

Referring to the headdress worn that morning by Mrs. Gumm, a woman introduced as a witness by plaintiff (the defendant offered no evidence) testified:

"Q.   Did you notice the head gear that she wore that morning?   A. Yes, sir, she had a sunbonnet on

"Q. What kind of a sunbonnet was it? A. She wore a small sunbonnet, which came around this way (indicating).

"Q. (By the Court): Did any portion of that sunbonnet project beyond her eyes? A. No, sir, it was a very small one, that sat back on her head.

"Q. Back of her eyes, all of it? A. Yes, sir.

"Q. So that she could see to one side or another without turning her head? A. Yes, sir."

The petition is in two counts: In the first, the negligence on which the action is founded consists of the failure to maintain a watchman at the crossing and of the act of running the train over the crossing at a greater speed than six miles per hour. The second contains an allegation to the effect that the operators of the train could have discovered the peril of plaintiff and averted it had they exercised reasonable care. In other words, a plea of negligence under the humanitarian doctrine.

The answer contains a general denial and a plea of contributory negligence. The only instructions asked by plaintiff were given by the court. They submit the issues of defendant's negligence in failing to keep a watchman at the crossing and in running the train over the crossing at an excessive rate of speed, but do not submit the issue of humanitarian negligence pleaded in the second count of the petition. The defendant asked no instructions.

We concede that defendant was guilty of negligence in failing to have a watchman stationed at this crossing, in failing to ring the bell of the engine as it approached the crossing, and in running the train at excessive speed, and that each of these acts of omission or commission operated as a proximate cause of the death of Mrs. Gumm; but this concession still leaves us with the conviction that the theory on which the case was submitted to the jury is untenable, and that plaintiff has no cause of action at all unless it be one

predicated on "last chance" negligence. The negligence referred to in the instructions operated to lure the unfortunate woman into deadly peril, i. e., to place her in the path of the oncoming train, but she could not have reached that position had she exercised the degree of care for her own safety the law demanded of her, and thus she became imperiled by negligence of defendant and by her own contributory negligence. She was in possession of all her faculties and, while standing at the lamp post, had but to turn her face eastward to see the approaching train. There was nothing to obstruct her vision. It was her duty to look before starting to leave a position of safety and to continue on the alert until she had passed over the crossing. Had she performed that duty she would have seen the engine two hundred feet away, when she was twenty-five feet from the track. Plaintiff argues that she was justified in presuming that the train was not running to exceed six miles per hour. No presumption gave her the right to fail to make reasonable use of her senses for her own safety, and she had but to look from her place of safety to know that the train was too close and was coming too fast for the attempt to be made to cross until it had passed. Evidently, she suffered her attention to be absorbed in something else, probably by the passing freight train, and forgot to look to the east. Her negligence, as a matter of law, is indisputable and it deprives plaintiff of any cause of action based on negligence of defendant which merely conduced to place his wife in peril. [Payne v. Railroad, 136 Mo. 562; Kreis v. Railroad, 148 Mo. 321; Sanguinette v. Railroad, 196 Mo. 466; Hook v. Railroad, 162 Mo. 569; Schaub v. Railroad, 133 Mo. App. 444; Schmidt v. Railroad, 191 Mo. 215; Grout v. Railroad, 125 Mo. App. 552.].

It must not be inferred that the common law force and effect of contributory negligence has been impaired—much less destroyed—by modern applications of

the humanitarian doctrine. As a defense, it is as virile today as at any time in the history of jurisprudence, and where it appears that contributory negligence continued to the end to operate as a proximate cause of an injury, there can be no recovery. It is only where it appears that such negligence has been superseded in the chain of causal events by negligence of the defendant in failing to reasonably employ an opportunity to discover the peril and avoid the injury that contributory negligence ceases to be a good defense.

The learned trial judge erred in giving the instructions asked by plaintiff, and on the evidence in the record before us, should have sustained the demurrer to the evidence. But since the case was tried throughout on a wrong theory and there is that in the facts and circumstances before us which leads us to believe plaintiff may have a cause of action under the humanitarian doctrine, we shall remand the case for another trial. In order to convict defendant of humanitarian negligence in the operation of the engine, facts and circumstances must be adduced from which an inference may reasonably be drawn that there was something in the appearance of Mrs. Gumm when she left her position at the lamp post and proceeded towards the track to indicate to an ordinarily careful and prudent person in the situation of the engineer that she was unconscious of the approach of the engine and, if not warned, would walk into danger. The bare fact that she started towards the track, of itself, will not support such inference. People frequently come very close to the danger line at railroad crossings before stopping. Point is made in argument that the large sunbonnet worn by Mrs. Gumm was an obstruction to her sight and hearing, and that the engineer should have realized that such headgear might cause her to be oblivious to her danger. Reliance is placed on the case of Waddell v. Railroad, decided by this court in 113 Mo. App. 680, on the first appeal, and by the Supreme

Court in 213 Mo. 8, on the second appeal. In that case the plaintiff wore a sunbonnet which served as a pair of "blinders" but the motorman testified that he knew she was oblivious to danger and was intent on crossing ahead of the car, that he warned her, and that she heard the warning, but instead of stopping, tried "to run the crossing." In the present record, there is no such admission by the engineer, nor is there any evidence of any outward appearance in Mrs. Gumm of inattentiveness to the approach of the train. But as we have said, we shall give plaintiff an opportunity to try the case on what we pronounce to be the proper theory. Accordingly, the judgment is reversed and the cause remanded. All concur.