SOUTHERN RY. CO. *v.* WHALEY.

(*Nashville,* December Term, 1936.)

Opinion filed December 15, 1936.

CATES, SMITH & LONG, of Knoxville, for plaintiff in error.

GRIMM & TAPP and C. B. HARTMAN, all of Knoxville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Whaley, as administrator, recovered a judgment of $7,500 for the death of his daughter, struck by a Southern Railway train. The Court of Appeals affirmed, after suggesting a *remittitur* of $2,500, which was accepted. The railway brings this petition, which has been granted and argument heard, and assigns a number of errors, among others that a verdict should have been directed in its favor on the facts; that the charge was erroneous,

both because of affirmative expressions employed and also refusal of requests; and it is insisted that the errors recognized by the Court of Appeals in its opinion as prejudicial could not be cured, as was undertaken to be done, by a *remittitur*. Among these errors was the alleged misconduct of a juror in giving testimony, based on his own experience and observation, before the jury, tending to contradict a statement of fact made by the engineer of the train. We consider first the motion to direct a verdict.

The girl was thirteen years of age, well grown, having passed the sixth grade, and without any impairment of vision, hearing, or other faculties. She had been brought up on her father's farm, some eighteen miles from Sevierville, but at the time she was on a visit to a sister residing just northeast of Knoxville, a short distance from the scene of the accident, and in full view of frequently passing trains. She had made previous visits to this sister. On the day she was injured she had been on a visit to a neightbor's which carried her along Spring Hill road, which crossed the Southern Railway main line, double tracked, and was returning in mid afternoon. It was a bright day in July. She was seen by several parties living near the crossing, as she approached the tracks, *walking slowly* (italicized by us for reasons hereinafter noted), and was watched by them from a distance as she approached and came upon the tracks. About the same time an automobile approached the tracks from the opposite side, meeting her. The occupants saw and heard the train and stopped their car at a safe distance from the tracks. It appears without contradiction that from a position 40 or 45 feet from the tracks, which ran in a straight line at this point, there was nothing to ob-

struct her view up and down the railway tracks for a distance of 1,500 or more feet. She did not stop on the first track, but slowly walked on across it, and as she stepped into the space between the tracks, the engineer blew two sharp blasts, but instead of halting, or stepping back, the girl sprang forward and was struck by a corner of the engine and killed.

The crossing at this point was not a designated and marked crossing, but was within the railroad regulation statute, 1932 Code, section 2628, subsection (1), relieving railroads of the giving of statutory precautionary warnings of approach. However, it is shown that the engineer blew his whistle at a point about 1,600 feet from this crossing, giving two long and two short blasts, and no violation of statutory precautions is relied on. The girl never appeared upon the track as an obstruction. The plaintiff relied on common-law negligence, the charge being that the defendants, ''after discovering the peril to which plaintiff's intestate was thus exposed, negligently and heedless of impending consequences, failed to give plaintiff's intestate timely warning of the approach of said train.''

It is conceded that there is no evidence of excessive speed or failure to maintain a lookout, or of defective brakes or other appliances. The sole negligence relied on, as already seen, is of omission only, limited to the alleged failure of the engineer, after observing the girl walking slowly, approaching the crossing, to give timely warning, by bell or whistle, to this pedestrian; and, it being admitted that he did blow again just before he reached the crossing, in an attempt to warn her, as before stated, this claim of negligence narrows to his alleged failure to give such final warning sooner.

That is to say, no precedent negligence appearing, the theory is that, after seeing her approaching the tracks, the engineer negligently failed to discover, discern, or realize that she was in peril, and delayed giving his warning, by these sharp blasts of his whistle, until too late. R. M. McGhee, witness for plaintiff, says that he heard the train blow for the crossing, "two loud blasts of the whistle, followed by two short blasts," which was "the regular crossing signal;" that the whistle was next sounded, two short blasts, close, "something like two rails," from the crossing (a rail being some 33 feet long). This witness says, when asked as to the time between the two blasts and the collision: "Just a very short time; I would not say the seconds or minutes." He describes observing the girl as she walked slowly along the road toward the crossing and as she went on upon the first or north track. She was between the two tracks, but "I don't think she had reached the cross ties" when the whistle sounded, and "she jumped like she was going to jump across the track and it seemed the train hit." He says that "she could not have been hit if she had jumped back the other way," instead of right in front of the train. While the train was coasting down a very slight grade, this witness, seated on his porch, 75 or 100 feet away, says he could hear it running.

This is plaintiff's leading witness and his testimony is quite apparently fairly given. We accept his account, which, with some immaterial variations, is the preponderant proof.

Meanwhile, as this girl walked toward the crossing from the north, on which side the engineer was, his enggine backing, an automobile approached from the south, driven by witness Cliff. He stopped his car for the

train to pass some 15 or 20 feet back. When he observed the girl approaching from the north and saw her walk on upon the tracks, conceiving that she was not aware of the coming train, he yelled and signaled to her. He does not know whether she heard him or not. "I know the train was making a lot of noise and the whistle was blowing." These were the short blasts sounded just before the collision, when the train was about 50 or 60 feet from the crossing, according to the weight of plaintiff's proof.

The Court of Appeals treated the case as "within the rules of the last clear chance doctrine," and say that "this issue depends mainly upon the testimony of the engineer." He says that he saw the automobile on the south side of the railroad and that he blew for the crossing a second time, thinking that maybe the car might take a chance to come on and that the last time "I quit blowing, I was 80 or 90 feet from the crossing." He also said that he saw the girl as she approached the track slowly, and that she was looking in the direction from which he was coming, "she looked to me like she was watching my locomotive;" that, instead of stopping, to his surprise, she moved more rapidly in an apparent effort to run across the track ahead of the locomotive. When he saw this, he gave two or three sharp blasts and jerked on his brakes, but she seemed to try to jump across the track in front of the engine and was struck as she reached the far side of the track and thrown into the ditch or bank on that side.

But the Court of Appeals found that the greater weight of the evidence was that the girl was in fact looking toward the automobile, and not toward the train, and on the motion for a directed verdict properly adopted this

view, and the theory of the opinion seems to be that after the engineer saw her approaching and starting to cross the tracks, he negligently failed to blow the whistle in time to give her warning.

Considering the determinative facts that we have set forth, is there any material evidence that this engineer omitted to do what a reasonably prudent man, mindful of human life, would have done? He had blown for the crossing and was approaching it at a reasonable speed, 35 to 40 miles an hour, his train in full and unobstructed view, for 1,500 feet, of persons using the road. He observed that the car coming up from the south stopped, the occupants having quite naturally seen his train. He observed the deceased walking slowly toward the crossing and saw her come upon the northbound track, a place of clear safety. Should he have anticipated that she would wholly fail to stop, look, or listen, would fail to see or hear this train of twelve cars, making a noise heard some distance away by plaintiff's witnesses? Should it have occurred to him that this pedestrian would not stop for the train to pass, but would walk right on into collision with the train? It is a matter of common knowledge that persons walking along a street or highway, seeing an approaching passing train, continue to walk on up to a point only a few feet from the track and there stand. Is one thus acting in *apparent* imminent peril calling for preventive or protective action from the train crew? It is a rare and unexpected occurrence for a pedestrian, strolling along a road, to come upon a railroad track, down which in plain view a train is coming, and fail to pause and give to the train the right of way. All human experience and every reasonable presumption is against it. One has a right

to assume that a person will exercise ordinary care for his own safety.

Of course, it is quite apparent that the deceased was guilty of very great negligence and it would probably be conceded for the plaintiff that, if an adult, recovery would be barred by this negligence. This is well settled by our two leading cases discussing the doctrine of discovered peril, or the last clear chance. *Todd* v. *Cincinnati Railway Co.*, 135 Tenn., 92, 185 S. W., 62, L. R. A., 1916E, 555, and *Tennessee Central Railway* v. *Ledbetter*, 159 Tenn., 404, 19 S. W. (2d), 258, 260. In these cases, while extending application of this doctrine, where the defendant is a railroad, beyond actual knowledge of the peril to cases where the peril might have been discovered in time by the exercise of reasonable diligence, this court excludes recovery when the injured party is guilty of gross contributory negligence and holds that entering upon a railroad track without looking or listening is such negligence. But reliance is apparently had upon this girl's immature years, and the fact, of which the engineer could have had no sort of notice, that she lived far out in the country and was unaccustomed to railroad traffic. Does her age so relieve her of this charge as to render the defendant liable under the discovered peril rule, on the theory that, although he did not actually see and appreciate her peril, this engineer should have done so in exercise of reasonable care?

We are inclined to the opinion that a girl of thirteen years of age, well grown for her years, and with all her faculties unimpaired, is entitled to very little abatement of this contributory negligence rule, when the danger is so obvious as two railroad tracks and an oncoming train in plain view. Is it possible to conceive that a girl

of thirteen years, fairly educated, with all faculties, would not appreciate the peril incident to a collision with a railroad train? What would additional years have added to her sense of such an obvious situation? Would a woman of eighteen or twenty have been any more receptive to a warning of this nature? Immaturity would mean much more where complicated machinery is involved, or when conditions unusual, or latent in any degree, and therefore calling for experience, are involved. No particular years have been fixed by our statutes or holdings applicable to minors. The general rule is that contributory negligence on the part of a minor is to be measured in each case by its facts; the minor is chargeable with such care as a reasonably prudent person of like age, capacity, knowledge, and experience might be expected ordinarily to exercise. As said in our latest case, "young children are bound to use such care . . . as is ordinarily exercised by children of like age and intelligence." *Marion County* v. *Cantrell*, 166 Tenn., 358, 61 S. W. (2d), 477, 479. In that case the age of the boy who fell, or jumped, from a school bus was twelve years. For the statement GREEN, C. J., cites *Townsley* v. *Yellow Cab Co.*, 145 Tenn., 91, 237 S. W., 58; *Wells* v. *McNutt*, 136 Tenn., 274, 189 S. W., 365. In the *Wells Case* the child struck by an automobile was six, and it was said that *prima facie* a child of this age was not chargeable with contributory negligence, but that this presumption is rebuttable, and it then becomes a question for the jury. Many cases are cited. In this case it was, however, declared that "after the age of seven the rule is that the child may be chargeable with contributory negligence." In the *Townsley Case* the age was eleven, another automobile accident, and the court

677 wait

678

merely said the question of her responsibility for contributory negligence was for the jury.

But conceding, but not deciding, that when the age is as much as thirteen and the danger so obvious and pregnant with warning as in the instant case, the question of contributory negligence is for the jury and not the court, in the view we take we do not get to the question of contributory negligence.

In every action for tort it is, of course, essential that the defendant be chargeable with a breach of duty, either of commission or omission, contributing to the injury. Or, as well expressed in 20 R. C. L., 142, applicable here: "It is what the defendant did or failed to do after acquiring knowledge of the plaintiff's peril that constitutes the breach of duty," citing cases, including *Chatttanooga Light & Power Co.* v. *Hodges,* 109 Tenn., 331, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844.

As we read this record, no negligence is attempted seriously to be charged to the defendant railway, except only in the particular before mentioned, that is, the alleged failure of the engineer to blow his whistle earlier, after he saw the girl come up on the westbound track, when, as insisted, he should have apprehended her peril as she continued to approach without, apparently to others, having observed the coming locomotive. The issue, therefore, narrows to the question whether there is material evidence that this engineer should, in the exercise of due care, have become sooner conscious of her danger. On this question, it is the viewpoint of the engineer, his opportunity to observe and appraise the conditions, that must be given chief consideration.

It seems obvious that the doctrine of discovered peril never came into play in the instant case because (1) the

injured party was never in a *place* or position of peril until too late for preventive action by the defendant; and (2) if she can be said to have been in peril when she was yet approaching, but not upon the tracks, there is no material evidence that she appeared to the engineer so to be, or would have so appeared to a prudent man under like conditions, and that he negligently failed sooner to see that she was and act accordingly.

The first of these propositions requires no argument. So long as one is neither on the track, nor so close to it as by possibility to be struck by a train moving thereon, he is not in a place of peril. As used in this context, peril means imminent, impending peril. Note, 92 A. L. R., 149. In *Zeis* v. *Great Northern Ry. Co.* (1931), 61 N. D., 18, 236 N. W., 916, the pertinent rule is thus concisely stated: ''One is not in a position of peril within the so-called last clear chance doctrine when he occupies a place where, by the exercise of reasonable care for his own safety, all danger may be avoided,'' citing *Green* v. *Los Angeles T. R. Co.*, 143 Cal., 31, 76 P., 719, 101 Am. St. Rep., 68; *Wallis* v. *Southern P. Co.*, 184 Cal., 662, 195 P., 408, 15 A. L. R., 117; *Gumm* v. *Kansas City Belt R. Co.*, 141 Mo. App., 306, 125 S. W., 796; *Laughlin* v. *St. Louis, etc., R. Co.*, 144 Mo. App., 185, 129 S. W., 1006; *Virginia & S. W. Ry. Co.* v. *Skinner*, 119 Va., 843, 89 S. E., 887; *Butler* v. *Rockland, T. & C. St. R. Co.*, 99 Me., 149, 58 A., 775, 105 Am. St. Rep., 267; *Plinkiewisch* v. *Portland R., Light & P. Co.*, 58 Ore., 499, 115 P., 151.

And, on the second proposition of anticipated peril, in this *Zeis Case*, a truck was observed by the train crew to be slowly approaching the track. The court quoted approvingly the following: ''We are of the opin-

ion that the doctrine (last clear chance) in its broadest application will not support a recovery in the instant case. Those engaged in the operation of railway trains are not bound to anticipate that drivers of automobiles and trucks upon the highways will be guilty of negligence in approaching crossings without taking reasonable measures to ascertain the approach of a train." *State ex rel.* v. *Great Northern Railway Co.,* 54 N. D., 400, 209 N. W., 853.

This is the view expressed in our case of *Tennessee Central Railway* v. *Ledbetter, supra,* a case of an automobile approaching the crossing. Therein it was said that the engineer "no doubt thought that, in the circumstances, deceased would stop the car before reaching the track. He certainly had every reason to believe that he would. It is a very common occurrence for persons to drive cars near to the track and stop. The evidence shows that there was nothing to have prevented deceased from stopping his car." Surely all of this is even more true of a pedestrian. And it was said further that the engineer "has a right to assume that such a person will exercise ordinary care for his own safety. . . . It is only when the situation appears to be perilous that the defendant must act." And see *Gilliam* v. *Chicago, R. I. & P. Ry. Co.,* 206 Iowa, 1291, 222 N. W., 12, to the same effect.

This is not a case of an automobile approaching at high speed, with apparent purpose to proceed, or of an unmanageable team in close proximity, but of a pedestrian walking slowly. Admittedly, this girl, as she was seen approaching the tracks, was *walking slowly.* We emphasize this fact as having a particularly important bearing on the determinative question, which is whether the

engineer had reason to anticipate sooner that she would attempt to cross ahead of his train. In several cases the decision of the court apparently turned on the proof that the approaching party was seen running toward the track—a much more obvious suggestion of danger.

For example, in *Galveston, etc., Ry. Co.* v. *Wagner et al.* (Tex. Com. App.), 298 S. W., 552, 553, and *Missouri, Kansas & Texas Ry. Co.* v. *Cunningham et al.,* 118 Tex., 607, 23 S. W. (2d), 343, where the injured persons were seen near to and running directly toward the track, with the plainly apparent purpose of crossing, the court said the question became one for the jury as to reasonableness of the anticipation of the engineer. In the first of the foregoing cases this fair statement of the rule appears: One ''is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course *and probably will pursue it to the end* [italics ours], then, in such event, the second person is held to have knowledge of the peril of the other,'' citing for this rule the following Texas cases: *Houston, E. & W. T. R. Co.* v. *Kopinitsch,* 114 Tex., 367, 268 S. W., 923; *Texas & P. R. Co.* v. *Breadow,* 90 Tex., 26, 31, 36 S. W., 410; *Houston & T. C. R. Co.* v. *Finn,* 101 Tex., 511, 109 S. W., 918; *Gulf, C. & S. F. R. Co.* v. *Lankford,* 88 Tex., 499, 31 S. W., 355.

In disposing of a case of one seen driving a team toward a track on which a train was approaching the crossing, Mr. Justice Shaw is quoted as saying, in *Basham* v. *Southern P. Co.,* 176 Cal., 320, 168 P., 359, 363: ''It cannot be said either that he [the engineer] did realize the danger sooner, or that, in reason, with his knowledge,

he had cause to realize it sooner. Hence the clear chance doctrine never came into operation.''

This girl was not in a place, or position, of peril while she was *approaching*—walking slowly towards—these railroad tracks. The peril to her, which the event proved, was not by reason of her physical place or position, but because of her mental attitude, or condition. It was not her bodily location, but her mental abstraction, that involved her in peril. Not only was the engineer quite apparently not actually conscious of her peril, alone so latently grounded, but we can find no material evidence that he negligently failed to realize her mental attitude and, therefore, to discover her peril; no evidence that in the exercise of due care he should have become earlier conscious thereof.

Reference has been made to the finding of the Court of Appeals that, while the engineer testifies the girl looked his way, the weight of the evidence was that as she approached the crossing she was looking ahead and not toward the coming train. It would be going far to charge the engineer with negligence in failing to observe and give controlling significance to this circumstance. It would be difficult for an engineer, driving a heavy locomotive at forty miles an hour, to gauge with accuracy, in the moment of opportunity, just the range and direction of an approaching young female's vision. But this circumstance cannot be given determinative weight because plaintiff's witness, who was driving the car and testifies that she was looking ahead of her, also testifies that when he so saw her and attempted to signal her ''the train was making a lot of noise and the whistle was blowing.'' In other words, the engineer had then

become apprehensive of her danger and was doing all that he could do in the emergency.

We are cited to no case, and diligent search fails to discover one, wherein, under conditions which here obtained, negligence has been adjudged either in application of the last clear chance doctrine, or upon any other theory.

Finding no material evidence of culpable negligence on the part of the defendant, the motion for a directed verdict must be sustained, the Court of Appeals reversed, and the action dismissed.