Argued April 13, decided April 27, 1911.

## PLINKIEWISCH *v.* PORTLAND RY. L. & P. CO.

[115 Pac. 151.]

STREET RAILROADS — INJURIES TO PERSON ON TRACK — CONTRIBUTORY NEGLIGENCE.

1. A street car passenger, after alighting from a car eight or ten feet from a crossing, walked around behind the car and started to cross a parallel track. He walked with his head down, without looking or listening for an approaching car, and at the instant he stepped on the track he was struck by a car. By a casual glance he could have seen the car. *Held,* that he was guilty of contributory negligence as a matter of law.

STREET RAILROADS—OPERATION OF CARS—CARE REQUIRED.

2. A motorman observing a person near a track may assume that he will halt before stepping on the track, and a motorman who first saw a person as he stepped on the track six or seven feet away, and who could not then stop the car to prevent an accident, was not guilty of negligence; the car being operated at about four miles an hour.

STREET RAILROADS—NEGLIGENCE—PROXIMATE CAUSE.

3. Where the light was sufficient to enable a person nearly a block away to see an approaching car, the fact that a car striking a person stepping on the track had no headlight was immaterial on the issue of actionable negligence.

NEGLIGENCE—LAST CLEAR CHANCE RULE.

4. A plaintiff who admits negligence on his own part, and who seeks to avoid its consequences, has the burden of showing that, notwithstanding his negligence, the circumstances were such that defendant, after perceiving plaintiff's peril, could, by ordinary care, have avoided the injury.

STREET RAILROADS—INJURIES TO PEDESTRIAN—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

5. A person struck by a street car neither looked nor listened for an approaching car, nor took any precautions to insure his own safety. By a casual glance the approaching car would have been discovered. At the instant he stepped on the track the car struck him. The motorman could not see him until he stepped on the track a few feet away. *Held,* that the negligence of the street railway company in failing to stop the car, or in failing to ring the gong, and the negligence of the pedestrian were concurrent, precluding a recovery under the last clear chance rule.

STREET RAILROADS—INJURIES TO PEDESTRIAN—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

6. Where the death of a person was the result of his being struck by a street car, which carried him a distance of 40 or 50 feet, the last clear chance rule did not apply to the alleged negligence in failing to stop the car more quickly after the collision, for the whole accident was but one transaction.

CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWERS.

7. The proviso in Section 7007, L. O. L., describing the character of fenders for use on street cars, providing that municipal authorities may substitute another approved fender, is not invalid as giving the municipal authorities the right to arbitrarily set aside a general State law, but merely gives municipalities the right to determine the character of fenders for street cars operated within their limits.

STREET RAILROADS—REGULATIONS—VALIDITY.

8. A resolution of the council of a city, requiring two street railway companies to use a particular fender on its street cars operated within the city, is not void as discriminative, either in favor of or against the two companies; there being no other street railways in operation in the city.

STREET RAILROADS—REGULATIONS—VALIDITY.

9. A resolution of the council of a city, requiring street railway companies to use on their cars the "Hunter Drop Guard Fender," is not void as discriminating in favor of a particular fender, in the absence of anything to show that the fender called for is a patented article, or one that anybody is prohibited from making or selling.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE McBRIDE.

This is an action by Edward Plinkiewisch, administrator of the estate of Otto Brandes, deceased, against the Portland Railway, Light & Power Company, a corporation. The facts as disclosed at the trial are as follows:

Plaintiff's intestate was struck and killed by one of defendant's street cars, and this is an action to recover damages sustained by his estate by reason of such accident.

It is alleged that defendant was negligent in the following particulars: (1) In using a worthless and insufficient fender, different from that prescribed by the statutes of Oregon; (2) in failing to have the car under control when passing another car; (3) in failing to ring the gong as the car approached the crossing; (4) in failing to keep a headlight burning; (5) in carelessly and negligently failing to stop the car after seeing deceased coming upon the track and into a place of danger. Defendant denied the alleged negligent acts, pleaded a

resolution of the city council of Portland, authorizing the use of a fender of the character then used upon the car described in the complaint, and alleged that the accident was due wholly to the negligence of deceased in going upon the track without looking or listening for an approaching car.

The evidence introduced by plaintiff tended to show that deceased was on a car going east on Glisan Street in Portland, and that when within eight or ten feet of the west crosswalk of Eleventh Street, which intersects Glisan Street at right angles, he stepped off of the moving car on the south side and walked around behind the car, and started in a northerly direction across Glisan Street. This street has a double railway track upon it. The width of the track is three feet nine inches, and the distance between the nearest rails of the two tracks is six feet. The evidence shows that he walked with his head down, without looking for an approaching car, and that he stepped upon the track at the same instant that he was struck by a car going west, which was moving at a rate of from two to four miles an hour. He was carried by the car a distance of from 40 to 50 feet, and was so bruised and injured that he died shortly thereafter. At the conclusion of the testimony the court directed a verdict for defendant, and plaintiff appeals. Other facts will appear in the opinion.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. William C. Benbow.*

For respondent there was a brief over the names of *Messrs. Wilbur & Spencer* and *Mr. A. M. Dibble* with an oral argument by *Mr. Dibble.*

Mr. Justice McBride delivered the opinion of the court.

1. It is evident from the testimony that the negligence of the deceased was the proximate cause of his death.

He neither looked nor listened, nor took any precautions to insure his own safety, when it is evident that even a casual glance would have made known the fact that defendant's car was in close proximity. In addition to this he was attempting to cross the street, not at the crosswalk, but at an unusual place and under unusual circumstances, as his presence was concealed by the car that he had just left, until he approached within a few feet of the track.

2. Even if he had been observed nearing the track of the west-bound car, the motorman would have been justified in supposing that he would halt before stepping upon the track. To step from a place of safety to a place of imminent danger would require less than a second of time. A car going at the rate of four miles an hour would progress nearly six feet in a second of time. Had the motorman observed that deceased was likely to put himself in peril by attempting to cross the track, it would have required at least a second or more of time to stop the car. The testimony of Buchler, the only witness who actually saw deceased struck by the car, indicates that, when deceased had reached the south rail of the north track, the car was six or seven feet away. Here, for the first time, deceased was in a position of actual danger, or in a position that would indicate to the motorman that he intended to cross the track ahead of the car; and to say that he had time to realize the peril deceased was in, and apply the brakes and stop the car in less than two seconds, and that he was negligent in failing to do so, would be unreasonable.

3. The fact, if it be a fact, that the car had no headlight, can have no bearing, as the testimony shows that the light was sufficient to enable a person nearly a block away to see both deceased and the car.

Plaintiff, practically conceding the negligence of deceased, contends that the failure of defendant's motor-

man to stop the car for a considerable distance (from
40 to 50 feet) from the place of collision should entitle
plaintiff to recover upon the "last clear chance" rule. It
is contended with some plausibility that the jury might
have found that deceased came to his death, not from
the effect of the original collision, but from subsequent
injuries inflicted after he was thrown under the fender
and dragged to the place where the car finally stopped.
We find nothing in any phase of this case that justifies
the application of the "last clear chance" rule.

4. It should be borne in mind in the beginning that he
who admits negligence on his own part, and seeks to
avoid its consequences, has the burden of proof to show,
by the outweighing of the testimony, that, notwithstand-
ing such negligence, the circumstances were such that
the opposing person, after perceiving his peril, could,
by ordinary care, have avoided injuring him. We fail
to find such proof in this case.

5. Conceding, for the purposes of the argument, that
defendant was negligent in failing to stop its car or in
failing to ring a gong, the evidence shows that the negli-
gence of deceased was concurrent, and continued to the
very moment of the injury. Under such circumstances
plaintiff cannot recover. *Drown* v. *Northern Ohio Trac-
tion Co.,* 76 Ohio St. 234 (81 N. E. 326: 10 L. R. A.
[N. S.] 421: 118 Am. St. Rep. 844) ; *Dyerson* v. *Union
Pac. R. Co.,* 74 Kan. 528 (87 Pac. 680: 7 L. R. A. [N. S.]
132) ; *Holmes* v. *Southern Pac. C. R. Co.,* 97 Cal. 161 (31
Pac. 834).

6. Nor can the "last clear chance" rule apply to the
alleged negligence of defendant in failing to stop its car
more quickly after the collision occurred. The evidence
is clear that the death was the result of deceased's having
been struck by the car. Whether the whole injury hap-
pened at the very moment of the collision, or partly then
and partly afterward, and before the car was stopped,

is a matter of mere conjecture. The whole accident was one transaction, and, to attempt to cut it into fragments, it would have been necessary to require the jury to depart from the realm of proof and enter the domain of speculation. *Rider* v. *Syracuse R. T. R. Co.,* 171 N. Y. 139 (63 N. E. 836: 58 L. R. A. 125) ; *Drown* v. *Northern Ohio Traction Co.,* 76 Ohio St. 234 (81 N. E. 326: 10 L. R. A. [N. S.] 421: 118 Am. St. Rep. 844).

The contention that the defendant was negligent in failing to have a proper fender upon its car, cannot be sustained. Section 7007, L. O. L., describes the character of fenders that shall be used upon street cars in the State of Oregon, but has this proviso:

"Provided, that whenever, in the judgment of the mayor and the members of the common council * * * it shall be deemed for the best interests of the residents and inhabitants of any such city or town to substitute in lieu of the apron, fender, or guard, hereinbefore provided for, another approved design of apron, fender, or guard, said mayor and said city council shall have such right whenever there shall be entered upon the records of said city or town the reasons for making such substitution."

Before this accident occurred, the council and mayor, by a resolution duly passed, declared that the "Hunter Drop Guard Fender," of the design, form, and construction adopted for use by the Portland Railway Company and the City & Suburban Railway Company, was adapted for use in the City of Portland, and better calculated to prevent accidents or injuries to persons than the fender provided for· in the act of the legislature, and directed its use in the City of Portland by such companies and their assigns.

7. It is not disputed that the fender actually in use on the car in question was of the design and character prescribed by the resolution; but it is contended that the proviso in the act is unconstitutional, in that it gives the

mayor and council the right to arbitrarily set aside a state law. We do not take this view of the act. The intent of the act is purely to prescribe in general terms what shall constitute a sufficient fender, until each distinct locality shall have seen fit to legislate for itself on that subject. This court has upheld local option in regard to the sale of liquor, and we see no good reason why Portland, or any other municipality, may not be permitted to exercise the same right in regard to fenders. The principle is the same; the regulation of each is the exercise of the police power for the benefit of the public.

8. It is also claimed that the resolution is void because it discriminates, either in favor of or against two railways; but it is not claimed that there are any other street railways in operation in Portland, and, as they can only exist by virtue of franchises granted by the city, we will assume that there are no others, rather than that the authorities intended to make an unlawful discrimination.

9. It is also contended that the resolution is void because it discriminates in favor of a particular fender. The name "Hunter Drop Guard Fender" is evidently used to describe the device which the council intended should be adopted. It is not shown to be a patented article, or one that anybody is prohibited from making or selling. It was the intent of the statute that the device approved and adopted should be described with convenient certainty, and we think a description by name, with the addition that it was of the pattern then in use by the two railway companies, merely served the intent of the statute, and did not unduly discriminate.

The judgment of the circuit court is affirmed.

AFFIRMED.