[File No. 5870.]

ROSE E. ZEIS, Respondent, v. GREAT NORTHERN RAILWAY COMPANY, a Corporation, and Herman Meckler, Appellants.

(236 N. W. 916.)

Opinion filed May 19, 1931.   Rehearing denied June 13, 1931.

*M. W. Murphy* and *Murphy & Toner,* for appellants.

*Shure & Murphy,* for respondent.

NUESSLE, J. This action is brought by the plaintiff, Rose Zeis, to recover under § 8321, Comp. Laws 1913, for the death of her husband, Joseph A. Zeis, by wrongful act.

The defendant, Great Northern Railway Company, operates a line of railroad, running northwesterly from Fargo to Minot. The defendant Meckler is one of its engineers. The railroad crosses sections 29 and 30 in Reed township, Cass county. It intersects the section line running north and south between these sections, forming acute angles therewith of 62½ degrees. In 1929, the deceased, Joseph A. Zeis, resided at Fargo. He owned a farm in Reed township, about a mile north of the crossing where the defendant's railroad intersects the section line as above set forth. He was at the farm on the evening of September 9th. He wished to take some sheep to the packing plant at West Fargo. He had at the farm an open 1926 Model T. Ford touring car. The back seat had been taken off and a box placed thereon. He loaded five sheep, weighing 95 or 100 pounds each, and started for the packing plant. To get there it was necessary for him to cross the defendant's railroad at the crossing above described. At the place of

this crossing the track was raised 5½ feet above the level of the sur-
rounding prairie. The prairie here was practically level. Approaches
were built to the crossing. These approaches were of earth taken from
adjacent borrow pits on the right of way. The approach from the
north was about 100 feet long, measured from the center of the track.
Beginning at the north end of the approach for the first 20 feet of
this distance, the gradient was 1 per cent, the next 10 feet it was 3
per cent, the next 10 feet it was 4 per cent, the next 10 feet it was 8
per cent, the next 20 feet it was 9 per cent, the next 10 feet it was
8.8 per cent, the next 10 feet it was 9.6 per cent, and the last 10 feet
was practically level. The approach was narrow, from 9 to 12 feet
in width at the top. It had been lately repaired and was somewhat
rough. The edges were soft. It would have been difficult for two cars
to pass on it. The trail, in which the travel went, ran up the center
of the grade. Looking northwesterly from the crossing along the rail-
road, the track is straight and almost level for one and a half miles,
and the view is clear and unobstructed for that distance. There is a
line of telegraph poles parallel with the track and 51.8 feet north from
its center, as measured along the center of the highway. These poles
carried cross-arms. The photographs shown herewith, plaintiff's ex-
hibits 4 and 5, show the track, the poles, the crossing, and the grade.
The first of these photographs, exhibit 4, was taken at a point 70 feet
7 inches east from the center of the highway and 49 feet 4 inches
north of the north rail. The view is toward the west. The railroad
bridge shown is 400 feet west from the crossing. The woods appearing
in the distance are along the Sheyenne River, a mile and a half west
from the crossing. The camera evidently was placed directly in the
line of the telegraph poles. The second photograph, exhibit 5, was
taken 103 feet 4 inches north of the north rail, at a point in the center
of the highway. It shows the view looking south. Both of these
photographs were taken on October 1st, three weeks after the date of
the accident. The defendant operates one of its fast passenger trains,
known as train No. 2, over this line of railroad. No. 2 ordinarily
passes this point at a speed of 50 miles an hour. September 9th was
a clear, bright day. Zeis, coming from the north, reached the crossing
about 4 P. M. He attempted to pass over it. For some reason when

almost up to the rails he stopped and backed down. He backed into the field east of the road, turned around, turning to the left, and started up the approach again. At this moment train No. 2 driven by the defendant Meckler was approaching from the west at a speed of 50 miles per hour. The whistle was blown at the whistling post, 1420 feet west of the crossing, and the bell, automatically operated, was ringing. Zeis drove up to the crossing without stopping and just as he was passing over the second rail the train struck the rear end of his car. The car was demolished and Zeis was killed.

Plaintiff brought this action to recover for his death, alleging negligence on the part of the defendants in failing to keep and maintain a sufficient crossing and approach, in failing to give proper warning of the approach of the train, and in failing to keep a proper outlook, and to properly protect the decedent upon discovering his peril. The answer sets out a general denial of negligence, coupled with a charge of contributory negligence on the part of the decedent. The case was tried to a jury. Plaintiff had a verdict. The defendants challenged the sufficiency of the plaintiff's evidence by proper motions for dismissal and for directed verdict. The appeal is from the judgment.

The case was submitted to the jury on the issues as made by the pleadings. The jury having returned a verdict for the plaintiff, and the defendants on this appeal having challenged only the sufficiency of the evidence to sustain that verdict, we must, in considering the evidence, take that view of it most favorable to the plaintiff. Of course, the defendants having pleaded contributory negligence, the burden is upon them to establish this defense by a preponderance of the evidence. And if the defendants were negligent in the respects charged, the verdict must stand, unless they have done so. In the next place, ordinarily the question of contributory negligence is one of fact for the jury and becomes a question of law only when reasonable men can draw but one conclusion from the evidence. Martin v. Parkins, 55 N. D. 339, 213 N. W. 574, and cases cited. Assuming then that the defendants were negligent in failing to keep and maintain a sufficient approach and crossing; in failing to give proper warning of the coming of the train, and in failing to keep a proper outlook, we will proceed to examine the record and ascertain whether it is possible to say,

viewing the evidence in the light most favorable to the plaintiff, that Zeis was negligent as a matter of law.

The record is silent as to the length of time that Zeis had owned his farm north of the crossing. It is also silent as to whether he had ever before traveled the road and used the crossing in question. But it is clear that he must have known that the road on which he was traveling on his way to the packing plant crossed the defendant's tracks at the place where the accident occurred. It would have been impossible for anyone with ordinary eyesight to approach the crossing in question without being aware of the fact that there was a railroad track there. Zeis, according to the testimony of the only eyewitness, attempted to cross the railroad track when he first approached it. For some reason which does not appear his car stopped when close to the track and he backed down the approach. Then he circled in the field to the east of the approach and made another attempt to cross the track. There is a conflict in the evidence as to the extent to which the line of telegraph poles obstructs the vision of those approaching the railroad track from the north at this point. But the day was clear and bright. The time was mid-afternoon. It is undisputed that after passing this line of poles the view from the approach at any point between the poles and the track is clear and unobstructed northwesterly along the track for at least one and a half miles. This line of poles is 51.8 feet from the center of the track. So for a distance of almost 50 feet after passing the poles and before reaching the first rail a traveler, using his eyesight reasonably, can plainly see a train approaching from the west at any point within a mile and a half of the crossing. At the time of the accident the approach was somewhat narrow, and the grade up to the track somewhat steep. Yet the grade was not abrupt or excessive. It was almost uniform, and the rise from the line of poles to the track was 3.9 feet. The photographs shown above speak for themselves as to these things. Zeis was not carrying a heavy load. We do not know whether he was driving in low gear or in high. If he was traveling 4 miles an hour, then train No. 2 was approaching the crossing at a speed about thirteen times as great. If he was traveling 3 miles an hour, the train was approaching at a speed about seventeen times as great. We cannot believe that he was traveling slower than this. So,

while Zeis passed from the telegraph poles to the track, a distance of 50 feet, the train would not travel more than thirteen to seventeen times that far or from 650 to 850 feet. If Zeis was going faster, the train must have been proportionately closer to the crossing. In any event, the train must have been within a few hundred feet of the crossing and Zeis, had he looked, could not have failed to see it approaching. It is true that the angle made by the highway with the railroad was $62\frac{1}{2}$ degrees, so that Zeis would have had to have turned his head somewhat more to look west along the right of way than would have been the case had the crossing been at right angles. But considering the nearness of the train he would have had to turn his head only a little to his right to have seen it approaching. We are thus forced to the conclusion that when Zeis attempted the crossing the second time he either failed to look to ascertain whether there was a train coming, or that he was aware of the approach of the train and took a chance on beating it over the crossing. If the latter were the case, unquestionably he was negligent. If the former, he was negligent unless it can be said that his attention was excusably diverted from the train and the danger by the facts and circumstances existing. He knew of the crossing. He knew the steepness of the grade. He must have known that the defendant ran fast trains over this railroad at this point. He must have known that such a train might approach at any time. The plaintiff argues that the level of the railroad track was so high above the surrounding prairie and the highway leading to the crossing that Zeis must have been concerned about meeting a car coming from the south on the narrow grade. But there is no evidence of any car coming from the south and Zeis just before had been almost to the top of the grade, so he must have known whether there was a car coming. Furthermore, he was driving an open car. At the point where he passed the line of telegraph poles the highway was less than 4 feet below the level of the railroad track, and this difference gradually diminished as he approached the track. So sitting in his Ford he was elevated enough above the highway to enable him to see at once whether there was a car approaching from the south. Accordingly, it seems to us there can be no force to the argument that his concern over the possibility of meeting and passing a car on the narrow highway

could reasonably divert his attention from the danger thus so imminent. Nor could his preoccupation in making the grade justify his lack of vigilance. The grade was not excessively steep. His load was not a heavy one. The road, though somewhat rough, was fairly well traveled and the travel marks were so well worn and distinct that there was little likelihood of his car leaving them. Though he was not required to stop to ascertain if the crossing was safe, he was, nevertheless, bound to look and listen. He was bound to use his faculties reasonably. He could not shut his eyes and say he did not see, nor stop his ears and say he did not hear. See State ex rel. North Dakota Workmen's Comp. Bd. v. Great Northern R. Co. 54 N. D. 400, 209 N. W. 853; 45 C. J. 947, et seq. Considering all the circumstances it seems to us clear that viewed from any possible angle Zeis was guilty of negligence. State ex rel. North Dakota Workmen's Comp. Bd. v. Great Northern R. Co. supra; Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 686, 215 N. W. 158; Marshall v. Northern P. R. Co. 58 N. D. 626, 227 N. W. 55, and cases cited.

But the plaintiff contends that, in any event, the defendants were actionably negligent because they failed to take proper steps to protect Zeis after discovering his peril. The testimony of the fireman on train No. 2 is that shortly after passing the whistling post, 1420 feet west of the crossing, he observed Zeis approaching the crossing, and that he shouted a warning to the engineer. The testimony of the engineer is that thereupon another blast of the whistle was blown. The train was running at the rate of 50 miles per hour. It was only a matter of seconds until the crossing would be reached. The train had the right of way over it. Amenia & S. Land Co. v. Minneapolis, St. P. & S. Ste. M. R. Co. 48 N. D. 1306, 189 N. W. 343. Zeis was traveling up the grade. His vehicle could be stopped almost instantly. Both the fireman and the engineer were justified in assuming that whoever was approaching the crossing, having a clear and unobstructed view up and down the track, could not fail to see the train and would not disregard all precaution and attempt to pass ahead of it. They were justified in assuming that whoever was approaching the crossing would stop until the train had passed by. So it is clear to us that the doctrine of last clear chance cannot be here invoked in behalf of the

plaintiff. In State ex rel. North Dakota Workmen's Comp. Bd. v. Great Northern R. Co. supra, considering a state of facts very similar to those in the instant case, we said "But we are of the opinion that the doctrine (last clear chance) in its broadest application will not support a recovery in the instant case. Those engaged in the operation of railway trains are not bound to anticipate that drivers of automobiles and trucks upon the highways will be guilty of negligence in approaching crossings without taking reasonable measures to ascertain the approach of a train. If the rule were otherwise, the last clear chance doctrine would require the trainmen, at the peril of being held responsible for an accident, to slow down every time they should observe an oncoming motorist in a position where, if he did not see the train, he might negligently collide with it. The authorities sustain the view that one is not in a position of peril within the last clear chance doctrine when he occupies a place where, by the exercise of reasonable care for his own safety, all danger may be avoided. See Green v. Los Angeles Terminal R. Co. 143 Cal. 31, 101 Am. St. Rep. 68, 76 Pac. 724; Wallis v. Southern P. Co. 184 Cal. 662, 15 A.L.R. 117, 195 Pac. 408; Gumm v. Kansas City Belt R. Co. 141 Mo. App. 306, 125 S. W. 796; Laughlin v. St. Louis & S. F. R. Co. 144 Mo. App. 185, 129 S. W. 1006; Virginia & S. W. R. Co. v. Skinner, 119 Va. 843, 89 S. E. 887; Butler v. Rockland, T. & C. Street R. Co. 99 Me. 149, 105 Am. St. Rep. 267, 58 Atl. 775; Plinkiewisch v. Portland R. Light & P. Co. 58 Or. 499, 115 Pac. 151, 2 N. C. C. A. 746. In such a case the chain of causation extending from the original negligence is broken by the independent subsequent negligent act of the plaintiff and the original negligence is not the proximate cause of the injury. It cannot be contended in this case that the defendant was negligent after the driver's negligence had exposed him to peril. It was then too late to avoid the collision. See Virginia & S. W. R. Co. v. Skinner, 119 Va. 843, 89 S. E. 887, supra."

The judgment must be and is reversed and the action dismissed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.