COLLINS, ADMINISTRATOR, RESPONDENT, *v.* CRIMP, APPEL-LANT.

(No. 6,855.)

COLLINS, RESPONDENT, *v.* CRIMP, APPELLANT.

(No. 6,856.)

(Submitted December 7, 1931. Decided January 25, 1932.)

[8 Pac. (2d) 796.]

*Mr. R. F. Gaines* and *Mr. J. B. C. McKnight,* for Appellant, submitted briefs; *Mr. Gaines* argued the causes orally.

*Mr. Joseph J. McCaffery,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Chester W. Collins, thirteen years old, died September 20, 1929, from injuries received when he was run over by an automobile driven by the defendant, Roy Crimp. E. L. Collins, father of Chester, instituted two actions against Crimp; the first on his own behalf, the second as administrator of his son's estate.

Except as to the capacity in which the plaintiff sued, the cases are identical; they were tried separately, and each resulted in verdict and judgment for the plaintiff. Motions for new trials being overruled, defendant appealed from each of the judgments upon the sole ground that the evidence adduced is insufficient to sustain a verdict or judgment for plaintiff in either action.

There is no conflict in the evidence, and therein appear only those minor differences bound to creep in when a number of witnesses honestly endeavor to relate what they saw and heard at the time of an accident, and to give their opinions as to speed and distances.

Viewed in the light most favorable to the plaintiff, the testimony establishes the facts herein detailed. At 8:15 P. M. on September 20, 1929, the defendant drove east on Park Avenue, in the city of Anaconda, in a Buick automobile with brakes in good condition and headlights on. The avenue was paved and well lighted. Proceeding at approximately fifteen miles per hour, the car, crossing Ash Street, reached the east cross-walk when Chester Collins, riding a "scooter," consisting of a two by four and an apple box mounted on roller skates, dashed out of Ash Street "like a flash of lightning." The defendant saw him not more than a foot in front of the car; collision was inevitable and immediate; "he was knocked from practically a standing position higher than the radiator and two feet higher than the top of the car"; he was thrown more than six feet in the air; he turned in the air and fell on the right fender of the car, his head toward the driver, his knees further forward than the radiator. The boy remained on the fender for a brief space of time, during which the speed of the car did not slacken; he then slid off in front of the car, the front wheel of which passed over his chest and the rear wheel over his head; the car stopped four or five feet beyond the body.

Blood remained on the pavement where the boy fell, and on the night of the accident the coroner and other disinterested parties measured the distance from the point of collision to the blood spot. The coroner gave the distance as 45 feet from the east line of the cross-walk. Others made the distance 48 feet 5 inches by measuring from the center of the cross-walk, which is indicated as the place where the collision occurred. Two boys, who were eye-witnesses of the accident, made the distance 51 feet, while the father of the boy and others made a measurement some time later, by which they made it 61 feet.

The record, however, indicates that these last made a diagonal measurement which would not be accurate. As the blood spot was described as one foot east of the west line of a store building, which was on the third 25-foot lot from the corner, the distance was probably 51 feet, or possibly 54 feet, from the center of the cross-walk.

The plaintiff does not allege, nor does he contend, that the collision was in any manner due to any negligence on the part of the defendant. The complaint in the administrator's action contains the better statement of the alleged negligence on which plaintiff relies. After detailing what took place up to the time the boy was seen on the right fender of the car, the complaint alleges that "the defendant was * * * in a position where he could see the said Chester W. Collins in his then perilous position, or should have so seen him by the exercise of reasonable care, * * * but notwithstanding the perilous position of the said Chester W. Collins on the right fender of the said automobile, the defendant negligently * * * continued to drive * * * east * * * after driving the said automobile a distance of about forty-five feet at a speed of about fifteen miles per hour; * * * Chester W. Collins fell off of the said fender, * * * " and the car passed over him.

From the foregoing allegations, it is clear that plaintiff relies solely upon the "last clear chance" doctrine, which takes into consideration only such negligent acts or omissions as are chargeable to the defendant from and after the time he discovers the subsequently injured person in the position of peril designated and relied upon. (*Haddox* v. *Northern Pac. Ry. Co.,* 46 Mont. 185, 127 Pac. 152; *McIntyre* v. *Northern Pac. Ry. Co.,* 56 Mont. 43, 180 Pac. 971; *Westerdale* v. *Northern Pac. Ry. Co.,* 84 Mont. 1, 273 Pac. 1051.) In the *McIntyre Case,* it is held that defendant's duty arises only when he actually discovers the other in his perilous position; however, the defendant does not urge that the foregoing allegations are insufficient, and they will be deemed sufficient to bring the case within the doctrine upon which plaintiff places reliance.

The questions presented, then, are as to how long the boy was on the fender of the car; whether the defendant could have stopped the car within that time; and, if so, whether or not he was negligent in not doing so; and, if negligent, was such negligence the proximate cause of the boy's death; in other words, had defendant stopped his car in less time than he did, would he have avoided running over the boy?

By his own admission defendant could, while traveling at the rate of 15 miles per hour, stop his car in about its own length, but that means on the application of the brakes. An expert mechanic testified that he experimented and discovered that, knowing what he was intending to do, in advance, it required one second to transfer his foot from the gas feed to the brake pedal and apply the brake; this would seem to be a reasonably speedy operation, but it must be remembered that the defendant did not have advance warning that he was to be called upon to apply the brakes. However, conceding that this operation would require but one second, under the pleadings defendant's duty to act did not attach until the boy was on the fender.

One of the eye-witnesses, after experiments conducted with a watch, fixed the time elapsing between the time of the impact and the appearance of the boy on the fender as one and one-half to two seconds. As the boy landed on the front of the car, this would seem excessive, except for the fact that the impact would naturally throw him forward as well as upward, so that, to a certain extent, he would, on his ascent-descent, be traveling with the car.

As the only witnesses who presumed to estimate the distance the boy was thrown into the air say that he went higher, or two feet higher, than the top of the car and more than six feet up, it is clear that an appreciable period of time elapsed before he landed on the fender.

The witness Farlan said: "He was knocked from practically a standing position * * * two feet higher than the top of the car. * * * He dropped from two feet higher than the top of the car right down between the fender and the

radiator." Again he said: "As I looked at the boy I could see the top of the car below him. I am sure of that; and at that time he was sort of twisting and coming down." Farlan was one of the witnesses who, on measurements made, declared the distance between the point of collision and the blood spot in the street as 51 feet; yet he estimated the distance the boy was carried on the fender as 25 feet. As the car was traveling approximately 21½ feet per second, this would indicate that the time elapsing between the impact and the boy's coming to rest on the fender was a little over a second. Farlan declared, "The boy had to leave the ground and go up in the air and then come down, and that of course took some time."

It is clear that the boy did not go straight up into the air so that the car could pass under him while he was practically suspended in the air, or he would have landed behind the car. No one can say just what the effect of a collision between a comparatively light object raised above the ground, and another moving object many times its weight would be; at least no witness attempted to do so; but it would seem to be apparent that, as suggested above, the effect was to throw the boy not only up but forward, and it would appear that such would be the natural effect of such a collision.

To determine the number of feet a car travels per second, take one and one-half times its mileage per hour; consequently, defendant traveling at fifteen miles per hour was covering 22½ feet per second. If the boy rode the fender for 25 feet, he did so for but one and one-tenth seconds, and, assuming that defendant could shift his foot from the gas feed to the brake pedal and apply the brake in one second, his alleged negligence consisted in acting one-tenth of a second too slowly.

Discarding the estimate of 25 feet and going back to the testimony concerning distances ascertained by measurement, the time elapsing between the instant of impact, and the instant the boy slid from the fender, would be as follows: At 45 feet, 2 seconds; at 48 feet 5 inches, 2⅙ seconds; at 54 feet, 2⅖ seconds; and, even if we take the distance at 61 feet, the time would be less than 3 seconds.

Deducting from any of these brief periods of time one second for the period elapsing before the boy reached the fender, and one second for the operation of applying the brakes, and eliminating consideration of the fact that defendant was suddenly faced with an emergency, we are called upon to say that the defendant was chargeable with actionable negligence for his failure to act in less than a second of time.

Again, if we take the theory of plaintiff's counsel, which is contrary to the testimony of his own witnesses, that the boy was not thrown into the air but was merely picked up by the fender and carried forward, and therefore no time elapsed between the impact and his appearance on the fender, we must still allow some time for the operation of braking the car, and certainly are fair to the plaintiff if we but allow the one second in which an expert, knowing in advance what he is going to do, could perform the operation. Thus computing the time, less than two seconds constitute the time in which defendant should have acted in order to absolve himself of the charge of negligence.

However, even if we say that the jury was warranted in disregarding the positive testimony that the boy was thrown more than six feet into the air and in adopting counsel's theory, and that therefore there is evidence in the record warranting an implied finding that the defendant was negligent, there is a further situation which must be considered; i. e., Was the defendant's failure immediately to apply the brakes the proximate cause of the boy's injuries? In other words, can we say on the record made that, had the defendant applied the brakes, even at the moment of impact, the boy would not have fallen in front of the car nor been run over by it?

In order to recover, the plaintiff was required to show not only that the defendant breached a duty which he owed to the deceased and that damages resulted, but that the breach of his duty was a proximate cause of the injury suffered. (*Bennetts* v. *Silver Bow Amusement Co.*, 65 Mont. 340, 211 Pac. 336.) This element may be established by either

direct or circumstantial evidence, but in order to sustain a verdict there must be substantial evidence on which the jury may determine the question; mere suspicions, conjectures, or speculations are not sufficient. (*McIntyre* v. *Northern Pac. Ry. Co.*, above.)

There is no testimony in the record from which the jury would be warranted in assuming that, had the defendant applied his brakes the moment the boy landed on the fender, the boy would have escaped injury, for no matter when the brakes were applied, an operation requiring a second of time during which the car would have traveled 21½ feet, after application of the brakes the car would have gone forward at least its length, sufficient to have caused the injury regardless of the care exercised by the defendant. Nor is there any evidence on which a conjecture could be predicated to the effect that, had the car stopped sooner, the boy would have remained on the fender; indeed, the only evidence on the subject is to the effect that the sudden stopping of the car would throw the boy off, and one witness indicated that he thought the reason the boy fell when he did, was that the brakes were then applied. Whenever the brakes were applied, the car would go forward a sufficient distance, the length of the car, to go over the boy after he slid from the fender. In this the case differs materially from the showing made in the *Westerdale Case,* above, and from that made in *Green* v. *Metropolitan Street Ry. Co.*, 65 App. Div. 54, 72 N. Y. Supp. 524, cited therein and by this plaintiff. In the *Green Case,* the evidence tended to show that the deceased was thrown from a fender on a street-car by reason of the jolting of the car subsequent to the time the motorman should have stopped the car. Here the evidence tends strongly to show that the boy was in less danger while the car was in motion than he would have been had the brakes been sooner applied; and nothing but the wildest speculation can bring one to a different conclusion.

The plaintiff might have made out a stronger case by alleging negligence on the part of defendant in failing to keep a proper lookout on approaching a street intersection,

but on the record it would seem that the deceased met his death as the result of one of the lamentable, but unavoidable, accidents which too frequently occur in these days of motor vehicles and the use of the streets as playgrounds for children, for which no one can be held responsible.

The evidence does not warrant a finding that, during the almost infinitesimal period of time between the moment the boy landed on the fender and the instant he slid to the pavement, the defendant was negligent in failing sooner to apply his brakes, which negligence was the proximate cause of the boy's death.

For the reasons stated, each of the judgments is reversed and each case remanded to the district court of Deer Lodge county, with direction to enter judgment for the defendant.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES FORD, GALEN and ANGSTMAN concur.