[File No. 6541.]

WALTER RAMAGE, Appellant, v. WILLIAM TREPANIER, Respondent.

(283 N. W. 471.)

Opinion filed December 22, 1938. Rehearing denied January 28, 1939.

*Emanuel Sgutt,* for appellant.

*Bangs, Hamilton & Bangs* and *T. L. Degnan,* for respondent.

CHRISTIANSON, Ch. J. Plaintiff brought this action to recover damages for injuries resulting from an automobile accident, which, plaintiff claims, was caused by the negligence of the defendant. The case was tried to a jury and resulted in a verdict in favor of the defendant for a dismissal of the action. The plaintiff moved for a new trial on the grounds:

1. Irregularity in the proceedings of the Court and the order of the Court denying the plaintiff the right to examine the jurors as to their interest in any insurance company writing liability insurance by which the said plaintiff was prevented from having a fair trial.

2. Insufficiency of the evidence to justify the decision and that such decision is against the law.

3. Errors in law occurring at the trial and excepted to by the party making this application.

The motion was denied and the plaintiff has appealed from the judgment and from the order denying his motion for a new trial.

Plaintiff's first specification of error is predicated upon a ruling made by the trial court in the examination of the jurors on voir dire. The error is stated in plaintiff's brief thus: "Error in Refusing to allow Plaintiff's examination of Jurors on Voir Dire as to Their Interest in Liability Insurance Companies."

The only reference in the transcript of the proceedings had upon the trial—(which has been settled and certified as the statement of the case)—to the incident on which the assignment is predicated, is as follows:

"(The following motion was made in chambers out of the hearing and presence of the prospective jurors.)

"Mr. Bangs: (defendant's counsel) During the examination of the first juror, one J. J. Carter, when the twelve jurors were in the box and being examined for cause, the attorney for the plaintiff asked of Mr. Carter, in the presence of all of the other jurors in the box, and in their hearing, and also within the hearing of jurors who had not yet been called into the box for examination, whether or not Mr. Carter was an agent for any liability insurance company, and further asked regarding his possible connection with any insurance company. The defendant objects to this line of questioning and examination of jurors, on the grounds and for the reasons that it is against the law of the state of North Dakota and the rules laid down by the court, and that it is highly prejudicial to the rights of the defendant in this action; and further, that even though these questions were asked of only one prospective juror, nevertheless all of the others heard the questions asked and could gather therefrom that an insurance company was involved

in the defense, and at this time the defendant asks that a mistrial be declared.

"The Court: I will overrule the request for a mistrial, and it is possible that a jury, after hearing the evidence and the charge of the court, in consideration of the case may decide in favor of the defendant, in which case no damage can result. But the question is one which may be raised later, after the verdict is returned.

"Mr. Sgutt: (plaintiff's counsel) May I put this in the record: Does. the court request that the counsel for the plaintiff refrain from asking that question from the other jurors?

"The Court: Yes, the court requests that."

Upon the record before us, we have no means of knowing what was said, what questions were asked, or what rulings were made, either before or after the incident above referred to.

On the motion for a new trial two affidavits were submitted. One was an affidavit by plaintiff's attorney to the effect that "one of the jurors, whose name to the best of affiant's information and belief was Ralph M. Bosard, was an insurance agent and sat as a juror in the above entitled action." Defendant submitted, in opposition to the affidavit of plaintiff's attorney, an affidavit by the juror Bosard to the effect that he was, and is, a merchant in Grand Forks County, and that "he does now and then write some fire and hail insurance for the Minnesota Farmer's Mutual Insurance Company." In such affidavit, Bosard further stated that "he was one of the Jurors in the above entitled action when this case was tried at Grand Forks, North Dakota, and when the Jury was being chosen, he was one of the early ones to be examined by the Plaintiff's attorney, probably about the fourth or fifth juror to be examined and it was very soon after he was so examined by the Plaintiff's attorney and prior to the time that the first twelve Jurors had been completely examined, that he, during a short recess, stepped down to the table where the attorneys for the Plaintiff and Defendant were sitting and stated to both the attorney for the Plaintiff and Philip R. Bangs as one of the attorneys for the Defendant, that he had not been questioned as some of the others had before him, in regard to working for any insurance company and he stated that he did write some insurance. This happened before the first twelve Jurors

were all examined and there were several more called before the Jury was finally selected."

The presumption is that the trial court ruled correctly. The appellant has the burden of proving error, and to sustain that burden, must present a record affirmatively showing error. Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592; Raich v. Lindebek, 36 N. D. 133, 161 N. W. 1026; Raad v. Grant, 43 N. D. 546, 169 N. W. 588; Halstead v. Missouri Slope Land & Invest. Co. 48 N. D. 1001, 188 N. W. 163; Thompson Realty Co. v. Mowbray, 55 N. D. 732, 214 N. W. 908.

The record presented in this case wholly fails to show any ruling prejudicial to the plaintiff. According to the record, plaintiff's counsel had propounded a question to a prospective juror, which defendant's counsel made the basis for a motion for mistrial. In the question of plaintiff's counsel as contained in the record, there was nothing to indicate that he desired to pursue further the inquiry which had given rise to the motion for a mistrial. The motion for a mistrial was submitted in the absence of the jury. So far as the record discloses, there was no claim by plaintiff's counsel at that time that defendant was covered by liability insurance and that an insurance company was conducting the defense; nor was there any claim that there was any probability, or even a possibility, that any of the members of the jury panel were interested as stockholders, agents, or otherwise in any automobile liability insurance company.

We have no means of knowing what other questions plaintiff's counsel propounded. For aught the record on this appeal shows, plaintiff's counsel may have obtained all the information, which he claims he sought to obtain as regards any business connections, or activities, of the various jurors, by questions differently phrased. It is unnecessary, therefore, to consider in what circumstances, and to what extent, inquiry may be made of prospective jurors in a case where damages are sought for injuries sustained in an automobile collision, as regards their interest in, or connection with, companies writing liability insurance, for upon the record presented on this appeal, that question is not involved.

It is next contended that the trial court erred in its instructions relating to contributory negligence and proximate cause. No good purpose would be subserved by entering into an extended discussion of

these assignments. Plaintiff's complaint seems to be of the arrangement of the different paragraphs of the court's instructions rather than of the contents of such instructions. In appellant's brief, it is said: "It may be that after a full, complete, careful and detailed study of the charge of the court on the subject of contributory negligence, and after carefully weighing the meaning of every word from a strictly legal point of view, the court's statement is not technically erroneous. However, the subject of contributory negligence is not easily understood, particularly by laymen, who are not accustomed to legal reasoning and definitions and the nice adjustment of the different statements made by the court in his charge defining the law."

The criticism is not well-founded. The charge, considered as a whole, gave to the jury complete and accurate rules of law regarding the matters submitted to the jury for decision.

Complaint is also made of the following sentence in the instructions to the jury: "The court further instructs the jury that damages cannot be awarded for a mere accident." This was merely an introductory sentence, the instruction, of which it formed a part, reads as follows: "The Court further instructs the jury that damages cannot be awarded for a mere accident. The basis of damages is negligence on the part of the party sued, which is a direct and proximate cause of the injury suffered by the complaining party. Neither can damages be given because of sympathy, nor because one party or the other may be able to pay damages, but the basis of the recovery and the amount thereof must be solely on the basis of compensation to the injured party for his injuries sustained, if any. If you find that the evidence is evenly balanced, or if you find that both plaintiff and defendant were equally at fault for the collision and the resultant damages, and that such joint negligence was the cause of the accident referred to in the complaint, then the plaintiff cannot recover, and your verdict should be for the defendant."

It seems to be the contention of appellant that the instruction challenged conveyed to the jury the idea that plaintiff could not recover unless defendant's acts were deliberate and intentional. When the instruction is considered as a whole, it did not convey any such idea.

It is well settled that the court's instructions to the jury must be considered as a whole.

"No rule is better settled than that the court's instructions must be considered as a whole. The charge is entitled to a reasonable interpretation. It is construed as a whole, in the same connected way in which it was given, upon the presumption that the jury did not overlook any portion, but gave due weight to it as a whole; and this is so, although it consists of clauses originating with different counsel and applicable to different phases of the evidence. If, when so construed, it presents the law fairly and correctly to the jury, in a manner not calculated to mislead them, it will afford no ground for reversing the judgment, although some of its expressions, if standing alone, might be regarded as erroneous; or because there may be an apparent conflict between isolated sentences; or because its parts may be in some respects slightly repugnant to each other, or because some one of them taken abstractly, may have been erroneous." McGregor v. Great Northern R. Co. 31 N. D. 471, 154 N. W. 261, Ann. Cas. 1917E, 141.

Appellant also contends that the evidence is "insufficient" to sustain the verdict.

In disposing of plaintiff's motion for a new trial, the trial court filed a memorandum decision wherein he succinctly and accurately summarized the evidence as follows:

"The evidence shows that the parties to the action were approaching each other on a public highway near the village of Argusville in Cass County. The day was clear, the visibility was good, and each party could see the other for some distance before they reached the place of the accident. Neither party stopped, but each continued on his way, each expecting, apparently, to pass the approaching car safely. There was a curve in the road where the accident happened, and there was some ice on this curve. Ramage's testimony was to the effect that as he was going around the curve he saw the defendant cutting over his way, he put all his weight on his brakes; that the wheels of his car locked and his car slipped straight forward and the cars collided; and that when the collision took place the front of his car was over to the west of the roadbed he was traveling on, but it was not over the center line of the road. The testimony of Mrs. Ramage was substantially the same as her husband's, above recited. Two disinterested persons, Pacholke and Muhs, were called to testify in the case. At the time of the accident they were in a garage which was beside the road and close to the

spot where the cars collided. Pacholke said he saw both cars as they approached each other, and saw the actual collision; that both cars were coming around the curve of the road too fast; that as Ramage was going around the curve he applied the brakes to his car and the car straightened out and went across the center line of the road, where the two cars collided; that he and Muhs immediately went over to view the wreck, and found that Ramage's car was about a foot west of the center line of the road and within Trepanier's lane of travel.

Muhs testified: "I saw the accident just after the cars had collided; the curve of the road was dangerously icy, and had been for two or three days before the accident; the road at the place of the accident was 20 to 24 feet wide; that he walked up to the cars a minute after the accident happened; that the front wheels of Ramage's car were about two feet west of the center line of the road, and the rear wheels of Ramage's car were on the east side of the center line of the highway; Ramage's car was pointing northwest."

The plaintiff, Ramage, testified that he first noticed defendant's car approaching when that car was about "a quarter of a mile up the road from the curve;" but that he did not know exactly how many feet either of them were from the curve. He said: "A fellow would have to be a wizard to tell how far from the curve either one of us was at that time." The defendant, Trepanier, testified that he first noticed plaintiff's car when he, Trepanier, was about "two blocks" from the curve. On his direct examination, plaintiff testified that before entering the curve he was driving about thirty miles per hour; that on coming to the curve he slowed down, and "went into the curve about fifteen and twenty miles an hour" as near as he could judge. On cross-examination, he testified that before reaching the curve he drove thirty miles per hour, but slowed up before he reached the curve, and "went through the curve between 18 and 20 miles." The plaintiff's wife testified that before entering the curve, he (Ramage), was driving thirty to thirty-five miles per hour, and that on entering the curve he slowed down to about fifteen or twenty miles. The defendant testified that he was driving about twenty to twenty-five miles per hour, and that as he approached the curve and saw the plaintiff's car approaching, he slowed down; that in the sunshine he could see that the curve was icy. The witness, Mrs. Freeman, a sister of the defendant, Trepanier, and

a passenger in his car, testified that she was sitting in the front seat with the defendant who was driving; that in approaching the curve the defendant was driving between twenty and twenty-five miles per hour. The defendant testified that immediately after the accident, the plaintiff, Ramage, made the remark: "I should not have put on the brakes." The witness, Mrs. Freeman, testified that when they were driving to Fargo, after the accident, the plaintiff's wife said: "My husband said as soon as he hit the car,—'I should not have put on the brakes.'" The plaintiff and his wife denied making these statements, and they both testified that while the front wheel of plaintiff's car went out of the "rut," that his (plaintiff's) car was not over the center line of the road, but that the defendant's car came across the center line of the highway when the collision occurred. On the other hand, the defendant and the witness, Mrs. Freeman, testified that the defendant's car, at all times, stayed on the right-hand side of the road and at no time went across the center line, but that plaintiff's car did come across the center line so that plaintiff's car struck defendant's car behind the front wheel.

We fully agree with the trial court that under the evidence in this case, the questions of negligence and contributory negligence were for the jury. There is no merit in the contention that the verdict is contrary to the evidence.

Error is also predicated upon the alleged refusal and failure of the trial court to instruct on the last clear chance doctrine. Appellant's counsel contends that under the evidence there was basis for application of this doctrine in favor of the plaintiff, and that it was error for the trial court to refuse plaintiff's request for instruction.

The evidence shows that immediately adjacent to the curve, on the right-hand side as defendant was driving, there was an open place, or road, leading to a garage, and that it would have been possible for a person approaching from the direction that the defendant was coming, to drive into this open space, or road, instead of following the curve in the highway. And appellant's counsel contends that if the defendant had stepped on the accelerator and speeded up his car, he could have reached the open space, or road, leading to the garage, and driven onto that and that thereby the accident might have been avoided.

Appellant's contention that the last clear chance doctrine is applicable rests upon certain statements in the testimony of the witness, Mrs. Freeman, and in the testimony of the defendant.

Plaintiff quotes and relies upon the following testimony of the witness, Mrs. Freeman, elicited on cross-examination:

"Q. I think you testified that when you first saw the Ramage car you had not yet gone into the curve, is that correct? A. That is correct.

"Q. Where was the Ramage car when you first saw it? A. It was coming from our left and up toward the center of the road.

"Q. Yes, I know; I know you have testified to that, but I mean with reference to the curve? Had it entered the curve yet? A. It was just entering the curve.

"Q. It was just entering the curve when you first saw it? A. Yes.

"Q. While you had not gone into the curve? A. We had not.

"Q. Could you see ahead of you and see that clear space by the garage? A. Yes, sir.

"Q. And you thought that your brother was turning to go in there? A. No sir. When I saw this car coming towards us I had a feeling that he was going to go straight on. He didn't have to turn to go in the garage. If he had been going a little bit faster he could have gone straight on in the garage.

"Q. But he was going too slow? A. He was only going between twenty and twenty-five miles an hour.

"Q. If he had stepped on the accelerator there probably would not have been any accident? A. No, there probably would not."

Plaintiff also quotes and relies upon the following testimony of the defendant, also elicited on cross-examination:

"Q. Your sister said if you had stepped on the accelerator you could have gotten by. A. Yes.

"Q. Did you step on the accelerator? A. No.

"Q. And is that true, that if you had you could have gotten by? A. Yes.

"Q. It is? A. Yes."

The above quoted testimony is merely part of the testimony of each of these witnesses upon the subject to which it relates, and does not

give an altogether accurate description of the situation as they described it. The witness, Mrs. Freeman, testified:

### Direct examination

"Q. And as you came down this road, or your brother rather, did you see any other car? A. Yes, I saw a car coming around the turn here.

"Q. And that would be coming from the Fargo direction? A. Yes, sir.

"Q. And that later turned out to be the Ramage car, didn't it? A. Yes, sir.

"Q. Will you just—do you need this map to tell or not? A. No, I don't.

"Q. You just tell then what you saw with respect to the Ramage car and the accident? A. As we were going along the road we were on the west side of the road, and we had not started to make the turn at all until I saw this car coming from our left. And I remember distinctly of him coming around the curve, and I knew in a flash that he was not going to be able to make the curve, because he was going too fast. I heard my mother say, "What is that man going to do, what are we going to do," and just then the car——"

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Just as my mother said that the car—I thought my brother— I looked forward in front of me and I saw this road in front of me and I knew that was where brother Bill was going to go, instead of trying to turn to the left. He was still on the right side of the road, and just then the car hit the side, the left side of our car."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"If he had been going faster than 20 or 25 miles an hour the Ramage car would have gone over in the ditch and never hit our car."

### Cross-examination

"Q. Where was the Ramage car when you first saw it? A. It was coming from our left and up toward the center of the road.

"Q. Yes, I know; I know you have testified to that, but I mean.

with reference to the curve? Had it entered the curve yet? A. It was just entering the curve.

"Q. It was just entering the curve when you first saw it? A. Yes.

"Q. While you had not gone into the curve? A. We had not.

"Q. Could you see ahead of you and see that clear space by the garage? A. Yes, sir.

"Q. And you thought that your brother was turning to go in there? A. No, sir. When I saw this car coming towards us then I had a feeling that he was going to go straight on. He didn't have to turn to go in the garage. If he had been going a little bit faster he could have gone straight on in the garage.

"Q. But he was going too slow? A. He was only going between twenty and twenty-five miles an hour.

"Q. If he had stepped on the accelerator there probably would not have been any accident? A. No, there probably would not."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

The defendant, Trepanier, testified:

### Direct examination

"Q. And now to go back to before the collision, Bill. You tell this jury—we have got you on this highway and did, so as to bring it right up to the collision. Now you just tell the jury about that? A. Well, I was driving down the road and I saw this car coming, and I slowed down, because I could see in the sunshine that it was a bad curve, and the curve was very icy, and I drove down very slowly. And this car— turned out to be the Ramage car—come around the curve, applied his brakes, must have, and hit me.

"The Court: What is that? A. He come around the curve and slid into me.

"Mr. Bangs: Q. When he slid into you, Bill, where were you with respect to the center of the highway? A. I was still to the west, or to my right hand side.

"Q. And as the Ramage car slid into you, what part of your car did it hit? A. It hit the front fender and running board on my side."

.   .   .   .   .   .   .   .   .   .   .   .

"Q. Now did—you may state whether or not this collision was one

that came on suddenly, or one in which there was a lot of time to—
A. No, I would say very suddenly.

"Q. And with respect to your being able to get out of the way of
the Ramage car as it slid into you, did you have time to do that? A.
No, sir."

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

### Cross-examination

"Q. As you drove down that road you could see ahead of you that
garage with the clear space, couldn't you? A. Yes, sir.

"Q. When you saw, when it appeared to you that you were going to
hit, did you do anything at all to stop your car? A. That was impos-
sible at the time.

"Q. I mean did you do anything at all to stop your car, did you put
on your brakes? A. Yes.

"Q. Did you try to turn out into that clear way at all? A. I didn't
have an opportunity to.

"Q. Did you try to do it? A. That was impossible, to tell that quick
and operate that fast.

"Q. Did you try to, that is the question I am asking. You know
it is for the jury to decide whether or not you could have done these
things, but what I want to know is did you try to turn out? A. I can't
say for sure that I did or didn't.

"Q. You don't remember whether or not your turned that way? A.
No, I do not.

"Q. Your sister said—you were here yesterday? A. Yes, sir.

"Q. Your sister said if you had stepped on the accelerator you could
have gotten by. A. Yes.

"Q. Did you step on the accelerator? A. No.

"Q. And is that true, that if you had you could have gotten by?
A. Yes."

.    .    .    .    .    .    .    .    .    .    .    .    .

### Re-direct examination

"Q. In answer to one of Mr. Sgutt's questions you made the remark
that it was impossible for you to get out of the way and get over into
that clear place in front of the garage, and then he said, "Well, if you
had stepped on the accelerator you could have gotten by." I think you

said yes, Now when would you have had to step on the accelerator in order to avoid that accident? A. Well, I would say back about twenty feet.

"Q. Back about twenty feet from where the accident actually happened? A. That is what I would judge, yes, sir.

"Q. At the time that this condition arose, so that there was to be an accident, did you then have time to step on the accelerator and get out of there? A. No, sir."

The plaintiff testified on his direct examination:

"I went into the curve slow enough to make it. I slowed up for the curve before I went into it, and kept on the right hand side. I went into that turn about fifteen or twenty miles an hour, and it is a right hand turn and banked.

"Q. And as you came around the curve what did you see? A. When I got a little past the half way mark I saw another car coming.

"Q. Where was that car? A. He was a little to the—to my side of the center of the road. . . .

"Q. About how far from you was he at that time? A. When I saw he was cutting over he was about thirty-five or forty feet, I imagine.

"Q. About where in the curve were you at that time? A. At the time I seen him I was half way around.

"Q. You were half way around the curve? A. Yes."

The evidence in this case did not warrant a recovery under the last clear chance doctrine, or require the submission of instructions to the jury on that doctrine. "The doctrine of last clear chance presupposes negligence on the part of the person injured or killed, or whose property is damaged, which apart from the doctrine itself, would constitute contributory negligence precluding recovery in spite of defendant's negligence." Note in 92 A.L.R. pp. 48, 55. To render the doctrine applicable, it is essential that the plaintiff be in a position of peril which he is then unable to avoid "by the exercise of reasonable vigilance and care;" that "the defendant knows of the plaintiff's situation and realizes the helpless peril involved therein; or knows of the plaintiff's situation and has reason to realize the peril involved therein; or would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise;" and that the defendant "there-

after is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff." Am. Law Inst. Restatement, Torts, Vol. 2, § 479, p. 1253.

To render the defendant liable under the doctrine of last clear chance, "it is necessary that after he has discovered or should have discovered the plaintiff's peril he should have had the ability to avert the accident if he had used due care and competence in utilizing it. If the defendant, after discovering the plaintiff's peril, does all that can reasonably be expected of him, the fact that his efforts are defeated by antecedent lack of preparation or a previous course of negligent conduct is not sufficient to make him liable. All that is required of him is that he use carefully his then available ability." Am. Law Inst. Restatement, Torts, Vol. 2, § 479, p. 1256.

The peril which gives rise to the duty on the part of the defendant must be actual, and not merely imaginary, or a mere possibility of injury. "If there is nothing in the situation to indicate to an ordinarily prudent person that the person injured . . . could not reasonably escape from the position of danger, . . . there can be no recovery." 45 C. J. p. 992. See also State ex rel. North Dakota Workmen's Compensation Bd. v. Great Northern R. Co. 54 N. D. 400, 209 N. W. 853.

According to the undisputed evidence, the collision occurred at a point on the highway before the defendant had reached the place where it would have been possible for him to drive into the so-called open space, or road. The acts of negligence alleged in the complaint are that the defendant "negligently, carelessly, and recklessly drove around said curve at a high, dangerous and excessive rate of speed and without the due care required by existing weather conditions and his range of vision." Yet, notwithstanding the fact that excessive speed was the basic charge of negligence, it is claimed that the defendant, at some point before the cars met, should have stepped on the accelerator and increased his speed. Defendant's acts are to be measured by the conditions as they appeared to him at the time, and not by what may appear on reflection after the event took place.

It is always possible, after an accident has occurred, to theorize that if one or both of the parties, at some time anterior to the accident, had done, or refrained from doing, some particular thing, they would not have met at the particular point and the accident might have been

avoided. But the doctrine of last clear chance does not rest upon a basis of possibility, but upon one of reality.

When defendant saw plaintiff's car approaching, he was not required to anticipate that the plaintiff would eventually place himself in a position of peril. On the contrary, he was justified in assuming that the plaintiff would obey the law of the road and would not place either himself or the defendant in a position of peril. Zeis v. Great Northern R. Co. 61 N. D. 18, 236 N. W. 916. It was only after the defendant knew of plaintiff's situation, and realized, or had reason to realize, the helpless peril involved therein, or would have discovered the plaintiff's situation and thus have had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty toward the plaintiff to exercise, that defendant's acts became subject to, and his duty to the plaintiff measurable by, the doctrine of last clear chance.

"As to the necessity that the plaintiff be shown to have been in a position of peril, it is not sufficient to show that such peril was remote, uncertain, or contingent, but requires that the plaintiff be seen in a position of imminent danger immediately impending." Siegel v. Wells (Mo. App.) 287 S. W. 775, 777. See also note in 92 A.L.R. p. 115.

The doctrine of last clear chance would come into operation and could be considered by the jury only if they found that plaintiff, as a result of his own negligence, had subjected himself to a risk of harm and was in a position of peril, which he was unable to avoid by the exercise of reasonable vigilance and care. Am. Law Inst. Restatement, Torts, Vol. 2, § 479, p. 1253.

The question arises, if the plaintiff in this case was in such position, when was he placed there? At what point did defendant discover plaintiff's situation and realize, or have reason to realize, the peril involved therein, or when would he have discovered plaintiff's situation and thus have had reason to realize the plaintiff's helpless peril, if he exercised the vigilance which it was his duty to the plaintiff to exercise? The evidence in the case is to the effect that neither party was driving in excess of thirty-five miles per hour immediately before he reached the curve, and the testimony of both parties is to the effect that on entering the curve the speed of each car was lessened. According to a plat submitted by the plaintiff, the entire curve is only about 270

feet in length. The collision occurred at a point where plaintiff's car had traveled approximately 100 to 110 feet. If each of the cars traveled at the rate of fifteen miles per hour, they would approach each other at the rate of forty-four feet per second; if each of the cars traveled at the rate of twenty miles per hour, they would approach each other at a rate of a little more than fifty-eight feet per second. A careful consideration of the evidence leaves no serious doubt but that if the plaintiff were negligent, and, as a result of such negligence, placed in a position of peril, the defendant had only a second or two in which to utilize his "then existing ability to avoid harming the plaintiff," after he became aware, or could have become aware, of such peril.

It is quite apparent to us that if plaintiff were in a position of peril, occasioned by his negligence, the danger of harm did not arise until almost the instant of the collision. Barrett v. Alamito Dairy Co. 105 Neb. 658, 181 N. W. 550, 21 A.L.R. 966. In view of all the circumstances, we are convinced that reasonable minds could not say that any duty rested upon the defendant to have accelerated the speed of his car, at some prior time, so as to have enabled him to be past the point where the collision occurred at the time plaintiff's car reached that point. Ibid. See also Collins v. Crimp, 91 Mont. 326, 8 P. (2d) 796. In short, we are of the opinion, that the evidence in this case did not furnish a basis for recovery under the last clear chance doctrine, but presented only questions of negligence and contributory negligence. The trial court, however, did give instructions to the jury, which, in effect, gave to the plaintiff the benefit of the last clear chance doctrine. The court instructed the jury as follows:

"Unless the negligence of the party who sues proximately contributes to the injury on account of which he seeks to recover, it does not constitute contributory negligence so as to bar a recovery.

"If, notwithstanding the previous negligence of the plaintiff, the defendant, by the exercise of ordinary care and prudence, might avoid injuring the former but fails to do so, his negligence and not that of the plaintiff is the proximate cause of the injury."

The plaintiff received a fair trial. The jury decided the controverted issues of fact against the contentions of the plaintiff. The rec-

ord discloses no reason for disturbing the verdict. Hence, the judgment and the order appealed from must be, and they are, affirmed.

MORRIS, NUESSLE, SATHRE, and BURR, JJ., concur.